UNITED STATES COURT OF INTERNATIONAL TRADE
Hon. Timothy C. Stanceu, Hon. Jennifer Choe-Groves, Hon. M. Miller Baker

_____
                                              )
OMAN FASTENERS, LLC, *et al.*,                )
                                              )
       Plaintiffs,                            )
                                              )
   v.                                         )   Consol. Court No. 20-00037
                                              )
THE UNITED STATES; *et al.*,                  )   **Public Version**
                                              )
       Defendants.                            )
_____)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR STAY OF JUDGMENT PENDING APPEAL**

Consolidated plaintiffs Oman Fasteners, LLC ("Oman Fasteners"), and Huttig Building Products, Inc. and Huttig, Inc. (collectively "Huttig"), respectfully request that the Court deny Defendants' Motion for Stay of Judgment to Maintain the *Status Quo Ante* Pending Appeal ("Motion"). Plaintiffs recognize that the Court granted Defendants' similar motion in *PrimeSource Building Products, Inc. v. United States*, Court No. 20-00032 ("*PrimeSource*"),[1] but the present Motion is distinguishable from *PrimeSource* for three reasons. The first and second concern Defendants' entitlement to any stay. First, in light of the petition for rehearing *en banc* submitted by plaintiffs-appellees in *Transpacific Steel LLC v. United States*, Appeal No. 20-2157 (Fed. Cir.) ("*Transpacific II*"), which Plaintiffs will support as *amici*, this Court should not view the majority opinion in *Transpacific II* as having materially improved Defendants' likelihood to prevail on the merits of their appeal

---

[1] *See PrimeSource*, __ F.Supp.3d __, Slip Op. 21-94 (Ct. Int'l Trade Aug. 2, 2020).

of this case. Second, a stay would place a substantially higher burden on Oman Fasteners than the Court considered in *PrimeSource*. Finally, even if the Court determines that some form of stay is warranted, Defendants' request for retroactive relief is improper.

## ARGUMENT

**I.    DEFENDANTS ARE NOT ENTITLED TO A STAY PENDING APPEAL**

The party seeking a stay bears the burden of showing that circumstances justify the stay. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). A stay of judgment pending appeal is "an extraordinary remedy." *Badger-Powhatan, Div. of Figgie Int'l, Inc. v. United States*, 638 F. Supp. 344, 349 (Ct. Int'l Trade 1986); *see also Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 101 (Fed. Cir. 2014) (discussing "the extraordinary remedy of {preliminary} injunction"). The Court must consider four factors: (1) whether defendants have made a strong showing that they will succeed on the merits; (2) whether they will be irreparably harmed absent the stay; (3) whether issuance of the stay will substantially injure the plaintiff; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "There is substantial overlap between these and the factors governing preliminary injunctions." *Nken*, 556 U.S. at 434 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The "likelihood of success" and "irreparable harm" factors, working together, are the most critical, and where the United States is a party, the balance of equities and the public interest factors "merge." *Id.* at 434–35.

Defendants are not entitled to a stay pending their appeal here because they cannot make a strong showing of likelihood of success and will not be irreparably harmed in the absence of a stay, while a stay would substantially injure Plaintiffs.

2

### A. Defendants Have Not Shown the Requisite Likelihood of Success

As the Supreme Court explained in *Nken*, Defendants must make "'a strong showing that they will succeed on the merits.'" *Id.* at 426 (quoting *Hilton*, 481 U.S. at 776). Defendants cannot make that showing because the Federal Circuit's majority opinion—issued over the strong dissenting opinion of Judge Reyna—in *Transpacific* is distinguishable and because there is a significant probability that this Court's unanimous judgment in favor of the plaintiffs in *Transpacific Steel v. United States*, 466 F.Supp.3d 1246 (*Transpacific I*), will be affirmed by the Federal Circuit on rehearing.

In *PrimeSource*, this Court reasoned that the "recent decision by the Court of Appeals for the Federal Circuit { } in *Transpacific* {*II*}" warranted a conclusion "that defendants have made a sufficiently strong showing that they will succeed on the merits on appeal, so as to satisfy the first factor in {the stay} analysis." *PrimeSource*, Slip Op. 21-94 at 6. The Court explained that *Transpacific II* had "vacated a judgment of this Court, rejecting a claim similar in some respects to a claim this Court found meritorious in {*PrimeSource*}." *Id*. However, as the Court recognized, *Transpacific II* arose from materially different facts. First,

> {r}ather than upwardly adjust the tariffs imposed by a previous Section 232 proclamation, the action contested here imposed, for the first time, tariffs of 25% on a previously unaffected group of products. These products, identified in Proclamation 9980 as "Derivatives of Steel Articles," . . . were different than the steel articles affected by the earlier Presidential proclamation, Proclamation 9705.

*Id.* at 7. Second, "{i}n issuing Proclamation 9980, the President acted more than two years after receiving the 2018 Steel Report. In the *Transpacific* litigation, the analogous time

3

period was approximately seven months." *Id.* at 8-9. The difference is even starker: since Section 232 provided the President 90 days to declare what action he intended to take in response to the 2018 Steel Report, and a further 15 days to implement that action, *see* 19 U.S.C. § 1862(c)(1), Proclamation 9772, at issue in *Transpacific*, was only three to four months past the statutory deadline, while Proclamation 9980 was twenty months late.

Indeed, the majority opinion in *Transpacific II* recognized that other cases might be materially different and explicitly limited its opinion to Proclamation 9772:

> This does not mean that the statutory purpose is furthered by permitting *any* presidential imposition after the 15-day period, even an imposition that makes no sense except on premises that depart from the Secretary's finding, whether because the finding is simply too stale to be a basis for the new imposition or for other reasons. The statute indisputably incorporates a congressional judgment that an affirmative finding of threat by the Secretary is the predicate for presidential action . . . .

*Transpacific II*, 4 F.4th 1306, 1323 (July 13, 2021). Proclamation 9980 presents exactly the situation *Transpacific II* envisioned. The President took action against a handful of derivative articles of steel accounting for approximately *one percent* of all imports of derivative articles of steel. *See* Complaint, ECF 2 at ¶ 77. Proclamation 9980 purported to justify this action as addressing the under-utilization of domestic steel production capacity discussed in the 2018 Steel Report. *See* Proclamation 9980, 85 Fed. Reg. 5281 (Jan. 29, 2020). Whatever may be said in favor of incremental presidential action, targeting a tiny sliver of derivative articles of steel "makes no sense except on premises that depart from the Secretary's finding" in the 2018 Steel Report, even apart from the staleness of a two-year-old report on domestic steel capacity utilization. *See Transpacific II*, 4 F.4th at 1323.

In any event, *Transpacific II* is not final. Plaintiffs-appellees in that case recently filed their combined petition for panel rehearing and rehearing *en banc*. *Transpacific II*, ECF 68 (Appeal No. 20-2157) (Aug. 23, 2021). Therein, they ask the Federal Circuit to reconsider the majority's holding that presidential action outside the statutory deadlines is not *per se* unlawful. Plaintiffs will support the *Transpacific II* petition for rehearing *en banc* as *amici* and will file their *amicus* brief on September 6, 2021. The petition has a high likelihood of success given Judge Reyna's strong dissenting opinion in *Transpacific II*, and the fact that two panels of this Court, in this case and in *Transpacific I*, previously held presidential action outside the statutory deadlines unlawful. As Judge Reyna stated, "{t}he plain language and legislative history of § 232 demonstrate that the President must act within the specified time limits or else forfeits the right to do so until the Secretary of Commerce provides a new report," and "majority's malleable interpretation of § 232 opens the door to modifications of prior presidential actions absent the Secretary of Commerce's provision of current information." *Transpacific II*, 4 F.4th at 1339, 42. Plaintiffs will submit an *amicus* brief in *Transpacific II* precisely to highlight the impact of the majority's opinion on subsequent presidential modifications such as Proclamation 9980.

Having held that Proclamation 9980 is unlawful and entered judgment in Plaintiffs' favor, the Court should not grant Defendants a stay based on a non-final split opinion of the Federal Circuit in a distinguishable case, especially when there is a substantial likelihood of rehearing. At minimum, the Court should not make a stay decision until the Federal Circuit has considered the petition for rehearing, because presently Defendants cannot make a strong showing of likelihood of success on the merits of their appeal.

### B. Defendants Will Not Be Irreparably Injured Absent a Stay

In granting the stay in *PrimeSource*, this Court held that the irreparable harm to the United States lay not in "a factual determination that PrimeSource will be unable to satisfy its potential duty obligation," but "on the loss of the ability of the United States to exercise . . . the statutory authority of 19 U.S.C. § 1623(a) to secure this potential duty liability." *PrimeSource*, Slip Op. 21-94 at 12. Since the government obviously has no authority under 19 U.S.C. § 1623(a) to secure *unlawful* duties by requiring bonding, the Court also explicitly tied its irreparable harm determination to its prior conclusion that "{d}ue to the decision of the Court of Appeals in *Transpacific II*, the government has established a likelihood that ultimately it will assess Section 232 duties . . . ." *Id* at 11.

For the reasons discussed in the preceding section, the Court's conclusion in *PrimeSource* that Defendants established a likelihood of success on the merits was premature. Absent Defendants' success on the merits of their appeal, Proclamation 9980 shall remain as it is: unlawful and without effect. Accordingly, Defendants are not presently irreparably harmed, or indeed harmed at all, by their inability to secure customs duties that are not presently owed—and are not likely to be owed in the future.

### C. The Balance of Hardships Favors Plaintiffs

As Defendants themselves point out, the purpose of a stay is "'to avoid placing one party at a severe disadvantage during the period of litigation.'" Motion at 10 (quoting *Bell v. Tsintolas Realty Co*., 430 F.2d 474, 482 (D.C. Cir. 1970)). The stay Defendants seek would impose substantial hardship on Plaintiffs, in particular Oman Fasteners, and place Plaintiffs at a severe disadvantage. At the same time, as discussed below, Defendants do

6

not need a stay to protect entries from being liquidated without assessment of Section 232 duties, should they ultimately prevail on appeal.

First, unlike in *PrimeSource*, [





] *See* Karaga Decl.[2] at ¶ 6. [


] This would create substantial harm and severe disadvantage to Oman Fasteners.

[

] the antidumping order in *Certain Steel Nails from the Sultanate of Oman*, Inv. No. A-523-808 ("*Oman Nails*"),[3] [


] Karaga Decl. at ¶ 7. Specifically, the entries that would be subject to the proposed stay would coincide with the as-yet uninitiated seventh administrative review (covering entries between July 1, 2021 and June 30, 2022) and very likely eighth

---

[2] Declaration of Steve Karaga in Support of Plaintiffs' Opposition to Defendants' Motion for Stay, attached hereto.

[3] Certain Steel Nails from the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam: Antidumping Duty Orders, 80 Fed. Reg. 39,994 (July 13, 2015)

administrative review (covering entries between July 1, 2022 and June 30, 2023) in *Oman Nails*. *Id.* at ¶¶ 8-9.  Liquidation of entries by Oman Fasteners during these periods remains suspended by law until the conclusion of each administrative review proceeding. *See* 19 U.S.C. § 1675(a)(3)(B).

Following the Department of Commerce's normal regulatory schedule for conducting administrative reviews, the final results of the seventh and eighth *Oman Nails* reviews would not be published until the end of 2023 and 2024, respectively. Karaga Decl. at ¶¶ 8-9. The suspension of liquidation would only be lifted thereafter, with actual liquidation of the entries occurring well into the following year (2024 and 2025). And that four-year delay is the best case scenario for Oman Fasteners: if one of the administrative reviews was subject to judicial review by this Court, the suspension of liquidation would persist much longer. For example, this Court issued its judgment with respect to the second administrative review of *Oman Nails* (covering entries of merchandise between July 1, 2016 and June 30, 2017) only in June of this year, *see Mid Continent Steel & Wire, Inc. v. United States*, ___ F.Supp.3d ___, Slip Op. 21-74 (Ct. Int'l Trade, June 14, 2021), adding approximately two and a half years to Oman Fasteners' wait for duty refunds.

The net result of a stay would be uniquely punishing. [

]

*See* Karaga Decl. at ¶ 5. To implement the bonding Defendants seeks as part of their stay, Oman Fasteners would therefore need to [

8

] This extreme burden [

] easily outstrips the theoretical burden on Defendants in the absence of a stay—that an unlawful duty *might* be reinstated on appeal such that Defendants might have been entitled to secure that duty via a customs bond.

Nor is it accurate to say that Plaintiffs implicitly found continued bonding "acceptable in agreeing to the initial preliminary injunction order and the amended preliminary injunction orders" in this case. *See PrimeSource*, Slip Op. 21-94 at 14. Faced with Proclamation 9980—which at the time remained unadjudicated and in full force—Plaintiffs faced the impossible alternative of depositing punishing 25 percent duties on their entries. By comparison, consenting to bonding until this Court could issue its judgment was the lesser of two extreme burdens, if only just. However, to ask Plaintiffs to accept the same bonding—for an even longer period—when this Court has already held that Proclamation 9980 is unlawful and void, and therefore Plaintiffs owe no Section 232 duties, is an entirely different matter. With Oman Fasteners in particular, Defendants seek to impose [

], despite the fact they lost.

## II. ANY STAY SHOULD NOT INCLUDE PAST ENTRIES

For the reasons discussed above, a stay pending appeal is not warranted at this time. However, to the extent the Court does enter a stay, that stay should not apply retroactively to any entries prior to imposition of the stay. Defendants grossly overstep in proposing that the stay order require Oman Fasteners to "provide retroactive single transaction bonds for subject entries made . . . until Oman {Fasteners} terminates and replaces its current

9

continuous bond." Proposed Order, ECF 111-1 at 2. These proposed "single transaction bonds" would be "in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry." Motion at 25-26. [

] *See id.* at 26. Such a stay would not merely inflict punishing hardship on Oman Fasteners, it would be unconscionable. Even more so because Defendants waited months to request it.

Defendants offer no support for the proposition that this Court can impose injunctive relief that does not merely preserve the *status quo* or return to some *status quo ante*, but rather fashions retrospective relief that makes Oman Fasteners—which prevailed in its suit—[                                    ]. The government is entitled to collect duties at two points in time: estimated duty deposits at the time of entry, and final duties at liquidation. The bonding to which the parties agreed in connection with the preliminary injunction in this case was in lieu of the deposits due at the time of entry, as—for the most part—is the bonding Defendants seek to reimpose via their Motion. There is simply no basis to grant Defendants a bonding windfall for merchandise that entered the United States at a time when the Court had declared Proclamation 9980 unlawful and void, and no order of this Court limited the immediate effect of that judgment.

## CONCLUSION

Defendants cannot show that they are likely to prevail on the merits of their appeal or that they will be irreparably harmed absent a stay. Moreover, the hardship a stay would impose on Plaintiffs far exceeds any purported harm to Defendants in the stay's absence. Accordingly, the Court should deny Defendants' motion for stay pending appeal.

In any event, the Court should not include any requirement for retrospective bonding for Oman Fasteners' entries since May 20, 2021.

Dated: August 30, 2021

/s/ Michael P. House
Michael P. House
Andrew Caridas
Shuaiqi Yuan
John B. Jacobs
Brenna D. Duncan
**PERKINS COIE LLP**
700 Thirteenth St., NW
Washington, D.C. 20005
202-654-6288
mhouse@perkinscoie.com