# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE TIMOTHY C. STANCEU, CHIEF JUDGE
THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
THE HONORABLE M. MILLER BAKER, JUDGE**

| | | |
|---|---|---|
| OMAN FASTENERS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Consol. Ct. |
| v. | ) | No. 20-0037 |
| | ) | |
| THE UNITED STATES, *et al.*, | ) | Public Version |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR STAY OF JUDGMENT TO MAINTAIN THE *STATUS QUO ANTE* PENDING APPEAL

<div style="margin-left:40%">

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TARA K. HOGAN
AIMEE LEE
Assistant Directors

MEEN GEU OH
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Washington, DC 20230
Tel. (202) 307-0184
*Attorneys for Defendants*

</div>

August 9, 2021

## **TABLE OF CONTENTS**

BACKGROUND ................................................................................2

ARGUMENT ...................................................................................10

   I.     Legal Standard ...................................................................10

   II.    The United States Possesses A Likelihood Of Success On Appeal.........11

   III.   The United States Will Be Irreparably Injured Absent The Requested Relief ............................................................................13

   IV.   A Stay Will Not Substantially Injure Other Parties .................................22

CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

## Cases

*Am. Grape Growers Alliance for Fair Trade v. United States,*
  9 CIT 505 (1985) ................................................................. 12

*Am. Motorists Ins. Co. v. Villanueva,*
  706 F. Supp. 923 (Ct. Int'l Trade 1989) ................................ 21

*Bell v. Tsintolas Realty Co.,*
  430 F.2d 474 (D.C. Cir. 1970) ............................................. 10

*Bohler-Uddeholm Corp. v. United States,*
  23 C.I.T. 801 (1999) .......................................................... 12

*Brock v. Pierce County,*
  476 U.S. 253 (1986) ........................................................... 21

*Cook v. United States,*
  104 F.3d 886 (6th Cir. 1997) ............................................... 21

*Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative,*
  240 F. Supp. 2d 21 (D.D.C. 2003) ....................................... 13

*E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.,*
  835 F.2d 277 (Fed. Cir. 1987) ............................................. 12

*Global Dynamics, LLC v. United States,*
  138 Fed. Cl. 207 (2018) ...................................................... 21

*Haig v. Agee,*
  453 U.S. 280 (1981) ........................................................... 21

*Heraeus-Amersil, Inc. v. United States,*
  1 C.I.T. 249 (1985) ............................................................ 21

*Hilton v. Braunskill,*
  481 U.S. 770 (1987) ........................................................... 10

*Ledbetter v. Baldwin*,
   479 U.S. 1309 (1986) ........................................................ 19

*Nken v. Holder*,
   556 U.S. 418 (2009) ...................................................... 10, 20

*PrimeSource Building Products, Inc. v. United States*,
   497 F. Supp. 3d 1333 (CIT 2021) ........................................ 5

*Project Vote/Voting for Am., Inc. v. Long*,
   275 F.R.D. 473 (E.D. Va. 2011) ......................................... 12

*Scripps-Howard Radio, Inc. v. FCC*,
   316 U.S. 4 (1942) ......................................................... 10

*Shinyei Corp. of Am. v. United States*,
   355 F.3d 1297 (Fed. Cir. 2004) .......................................... 15

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   897 F.2d 511 (Fed. Cir. 1990) ........................................... 10

*Thurston v. United States*,
   103 Fed. Cl. 505 (2012) .................................................. 21

*Transpacific Steel LLC v. United States*,
   No. 2020-2157, 2021 WL 2932512 (Fed. Cir. 2012) ..................... 11

*Transpacific Steel LLC v. United States*,
   474 F. Supp. 3d 1332 (Ct. Int'l Trade 2020) ......................... 23

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 (D.C. Cir. 1977) .......................................... 12

**Statutes**

19 U.S.C. § 1504(b)(1) ...................................................... 14

19 U.S.C. § 1504(d) ......................................................... 18

19 U.S.C. § 1505(a) ......................................................... 16

19 U.S.C. § 1516a(e) ........................................................................24

19 U.S.C. § 1623.................................................................................21

28 U.S.C. § 1581(c) ...........................................................................24

28 U.S.C. § 1581(i) ............................................................................15

28 U.S.C. § 2637(a) ...........................................................................24

**Rules**

United States Court of International Trade Rule 62 ..............................1

**Regulations**

19 C.F.R. § 159.1 ...............................................................................14

*Proclamation 9704 of March 8, 2018, Adjusting Imports of Aluminum Into The United States,*
    83 Fed. Reg. 11,619 ¶ 4 (Mar. 15, 2018) ..........................................22

*Proclamation 9705 of March 8, 2018, Adjusting Imports of Steel Into The United States,*
    83 Fed. Reg. 11,625 ¶ 5 (Mar. 15, 2018) ..........................................26

*Proclamation 9980 of January 24, 2020, Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States,*
    85 Fed. Reg. 5,281 (Jan. 29, 2020).............................................*passim*

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:   THE HONORABLE TIMOTHY C. STANCEU, CHIEF JUDGE
THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
THE HONORABLE M. MILLER BAKER, JUDGE**

_____

|  |  |  |
|---|---|---|
| OMAN FASTENERS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Consol. Ct. |
| v. | ) | No. 20-0037 |
| | ) | |
| THE UNITED STATES, *et al.*, | ) | Public Version |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR STAY OF JUDGMENT
## TO MAINTAIN THE *STATUS QUO ANTE* PENDING APPEAL

Pursuant to United States Court of International Trade Rule 62, defendants respectfully move for a stay of the judgment to maintain the *status quo ante* pending appeal.  On August 7, 2021, defendants filed a notice of appeal.  While the appeal is pending, we respectfully request that the Court enter an order: (1) staying the requirement to liquidate the entries of Oman Fasteners, LLC (Oman), Huttig Building Products, Inc. and Huttig, Inc. (Huttig) (Oman and Huttig, collectively, as plaintiffs) without the assessment of Section 232 duties provided for in Proclamation 9980 and reinstating the order to suspend liquidation, (2) staying the requirement to refund with interest any deposits of estimated duties under Proclamation 9980 made by Oman and Huttig, and (3) reinstating the requirement

for the plaintiffs to monitor their respective subject imports of merchandise covered by Proclamation 9980 and to maintain (and replace as needed) sufficient bonding to ensure that the Section 232 duties under Proclamation 9980 that will be owed by Oman and Huttig if defendants prevail on appeal are fully secured. Granting our request for relief will preserve the *status quo ante* and ensure that U.S. Customs & Border Protection (CBP) is able to bill for and collect the duties, should the defendants ultimately prevail on appeal.

On August 2, 2021, counsel for defendants consulted with counsel for the plaintiffs who represented that the plaintiffs will oppose any reimposition of the bonding requirement.

## BACKGROUND

This consolidated case is substantively identical to another case that was contemporaneously before this Court, *PrimeSource Building Products, Inc., v. United States, et al.*, No. 20-00032 (Ct. Int'l Trade). As in *PrimeSource*, plaintiffs' complaints challenge the lawfulness of Presidential Proclamation 9980 of January 24, 2020, *Adjusting Imports of Derivative Aluminum and Derivative Steel Articles into the United States*, 85 Fed. Reg. 5,281 (Jan. 29, 2020). *Oman Fasteners, LLC v. United States, et al.*, No. 20-00037, ECF Docket No. 2 (Ct. Int'l Trade); *Huttig Building Products, Inc., et al. v. United States, et al.*, No. 20-00045, ECF Docket No. 5 (Ct. Int'l Trade).

On or around the time plaintiffs filed their complaints, they also moved for a preliminary injunction, seeking to enjoin U.S. Customs & Border Protection's collection of Section 232 duties on its imports of covered derivative products. *Oman Fasteners, LLC v. United States, et al.*, No. 20-00037, ECF Docket Nos. 9-12 (Ct. Int'l Trade); *Huttig Building Products, Inc., et al. v. United States*, et al., No. 20-00045, ECF Docket Nos. 10-13 (Ct. Int'l Trade).  At the Court's advisement, the parties thereafter sought to negotiate an agreement that would protect the public fisc while also obviating the need for the Court to resolve the preliminary injunction motions.

Subsequently, the parties jointly submitted proposed orders to the Court that would: (1) enjoin CBP from collecting estimated Section 232 duty deposits for plaintiffs' covered entries, (2) enjoin CBP from liquidating plaintiffs' covered entries, and (3) require plaintiffs to obtain and maintain continuous bonds in an amount sufficient to "reflect the additional Section 232 duties {plaintiffs} anticipate{ they} would otherwise have had to deposit over the next prospective six month period."  *Oman Fasteners*, No. 20-00037, ECF Docket Nos. 27-29; *Huttig*, No. 20-00045, ECF Docket No. 24-25.

The Court entered orders on February 21 and March 4, 2020, respectively, which effectuated the parties' injunction proposals.  *Oman Fasteners*, No. 20-00037, ECF Docket Nos. 34-35; *Huttig*, No. 20-00045, ECF Docket Nos. 29-30.

By their terms, the orders were set to expire at the time judgment on this case was entered.

On March 12, 2020, these cases were assigned to the same three-judge panel, *Oman Fasteners*, No. 20-00037, ECF Docket No. 47; *Huttig*, No. 20-00045, ECF Docket No. 31, which was also the same panel reviewing *PrimeSource*. Four days later, at the parties' request, the Court consolidated the first counts in *Oman* and *Huttig* (challenging the Proclamation 9980 on statutory grounds), designated *Oman* as the lead case on that issue, stayed all remaining counts in both cases, and entered a briefing schedule for potentially dispositive briefing on the consolidated count. *Oman Fasteners*, No. 20-00037, ECF Docket No. 54; *Huttig*, No. 20-00045, ECF Docket No. 34.

On September 11, 2020 and January 20, 2021, the court granted the parties' joint motions to modify the February 21 and March 4, 2020 orders, respectively, to (1) require plaintiffs to monitor their respective subject imports and foregone duty deposits, beginning on the effective dates of their respective continuous bonds, and to terminate their respective continuous bonds before such foregone duty deposits reach the amount of the continuous bond, minus their respective baseline bond amounts as calculated pursuant to CBP's general continuous bonding formula, and replace them with new continuous bonds (and terminate and replace again before forgone deposits reach the amount of the new bond minus the baseline); and (2)

4

permit CBP to deny release to plaintiffs' entries once foregone duty deposits have reached the amount of the continuous bond minus the baseline, until the importer either terminates its current continuous bond and obtains a new continuous bond, or enters the merchandise using single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry. *Oman Fasteners*, No. 20-00037, ECF Docket Nos. 94-95 & 100-101.

At the conclusion of briefing and after resolving various other procedural matters, the Court granted plaintiffs' motion for judgment. Slip Op. 21-72 (Jun. 10, 2021). The panel majority, relying expressly on the decision it had just rendered in *PrimeSource*, entered judgment in favor of the plaintiffs. *Id*. at 12-13 (citing *PrimeSource Building Products, Inc. v. United States*, 497 F. Supp. 3d 1333, 1356-58 (CIT 2021)). The dissenting judge, relying on the dissent he had written in *PrimeSource*, explained that judgment should have been rendered in favor of the defendants. *Id*. at 15 (citing *PrimeSource*, 497 F. Supp. 3d at 1361 (Baker, J., dissenting).

The judgment, in relevant part, ordered five things: (1) a declaration that Proclamation 9980 was invalid as contrary to law; (2) liquidation of the plaintiffs' entries without the assessment of Section 232 duties provided for in Proclamation 9980; (3) refund with interest of any estimated Section 232 duties deposited by

plaintiffs under Proclamation 9980; (4) reliquidation of any of plaintiffs' subject entries that may have been liquidated with assessment of Section 232 duties provided for in Proclamation 9980; and (5) a lifting of the stay and dismissal of plaintiffs' remaining counts. *Oman Fasteners*, No. 20-00037, ECF Docket No. 108; *Huttig*, No. 20-00045, ECF Docket No. 36.[1]

To comply with the Court's orders, enjoining CBP from collecting duty deposits from Oman and Huttig under Proclamation 9980, CBP provided the plaintiffs with their own respective injunction-based exclusion numbers that they were instructed to use to exclude their respective subjective imports from the automated collection of Section 232 deposits. Declaration of Brandon Lord, ¶ 6 (hereafter, Lord Decl.). Records show that the plaintiffs have largely availed themselves of this arrangement to avoid paying Section 232 duty deposits on nearly all of their subject imports.[2]

---

[1] At the time of judgment, plaintiffs also had pending an unopposed motion for oral argument, which the Court in the same order deemed withdrawn at plaintiffs' request. *See id*.

[2] Our review shows that plaintiffs in spot-instances did not use the special injunction code for some of their subject imports, resulting in the automated collection of some Section 232 duties even despite the Court's orders. Lord Decl., ¶¶ 7-8. Oman has deposited a total of $ [ █████ ] in Section 232 duties on subject merchandise and Huttig has deposited a total of $ [ █████ ] in Section 232 duties on subject merchandise. *Id*.

As of July 26, 2021, the forgone Section 232 duty deposits for Oman's subject imports since the effective date of their current continuous importation bonds have surpassed the total amount of potential Section 232 duty liability that plaintiffs' current continuous importation bonds were intended to secure. *Id*. ¶ 18. Huttig, by our estimation, will surpass its current bond imminently. *Id*. ¶ 19.

Specifically, as described more fully in the declaration attached to this motion, Oman's current continuous importation bond covers all of Oman's entries made on or after March 21, 2021, with an aggregate limit of liability of $ [ ████████ ]. *Id*. ¶ 14. Huttig's current continuous importation bond covers all of Huttig's entries made on or after June 23, 2021, with an aggregate limit of liability of $ [ ████████ ]. *Id*. ¶ 16.

Oman's limit of liability was intended to cover up to $ [ ████████ ] in Oman's potential Section 232 duty liability, in addition to the applicable $ [ ████████ ] baseline bond amount, as calculated pursuant to CBP's general continuous bonding formula (which is intended to cover general risks to the revenue of the United States and risks of legal noncompliance other than the Section 232 duties that would be due for the subject imports should the Government ultimately prevail on appeal). *Id*. ¶¶ 9-10. Huttig's limit of liability was intended to cover up to $ [ ████████ ] in Huttig's potential Section 232 duty

7

liability, in addition to the applicable $ [ █████ ] baseline bond amount, as calculated pursuant to CBP's general continuous bonding formula. *Id.* ¶¶ 11-12.

Oman's total entered value of subject imports from the effective date of its current continuous importation bond, March 21, 2021, until July 26, 2021, was $ [ ███████ ], and the total amount of forgone Section 232 duty deposits on Oman's subject imports since the effective date of Oman's current continuous importation bond until July 26, 2021 is $ [ ██████ ]. *Id.* ¶ 14. Accordingly, the forgone Section 232 duty deposits for Oman's subject imports have already surpassed the potential Section 232 duty liability that the parties and the Court intended to be secured by Oman's current continuous importation bond. Specifically, Oman's forgone Section 232 duty deposits since March 21, 2021 reached [ ██████ ] on May 20, 2021, with entry number [ ████████ ]. *Id.* ¶ 15. This means that for all of Oman's subject entries made after entry number [ ██████ ] and until Oman's current continuous bond is terminated and replaced, the Section 232 duties that would be due for the subject imports should the Government ultimately prevail on appeal are completely unsecured. *Id.* ¶ 17.

Huttig's total entered value of subject imports from the effective date of its current continuous importation bond, June 23, 2021, until August 4, 2021, was $ [ ██████ ], and the total amount of forgone Section 232 duty deposits on Huttig's subject imports since the effective date of Huttig's current continuous

importation bond until August 4, 2021 is $ [⬛⬛⬛⬛⬛]. *Id.* ¶ 16.  Accordingly, the forgone Section 232 duty deposits for Oman's subject imports have already reached 82 percent of the potential Section 232 duty liability that the parties and the Court intended to be secured by Huttig's current continuous importation bond, and at the current rate, the forgone Section 232 duty deposits for Huttig's subject imports will likely surpass the [⬛⬛⬛⬛⬛] in potential Section 232 duty liability that was intended by the parties and the court to be secured by Huttig's current continuous importation bond well before the anniversary date of its current continuous bond, June 23, 2022.  *Id.*

Because the plaintiffs continue to import substantial volumes of subject imports, this means that if the Government ultimately prevails on appeal, and plaintiffs are then for whatever reason unwilling or unable to pay the Section 232 duties that would be due on its subject imports, any such duties for plaintiffs' subject imports beyond the limit of liability on the current continuous importation bonds (a portion of which is intended to cover general risks to the revenue of the United States and general risks of legal noncompliance, such as an importer's failure to pay, or the underpayment of, estimated duty deposits for duties other than the Section 232 duties for the plaintiffs' subject imports at issue in this action) will be completely unsecured and potentially uncollectable.

## ARGUMENT

### I.    Legal Standard

"The power to stay a judgment pending appeal is part of a court's 'traditional equipment for the administration of justice.'"  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)).  The purpose of a stay pending appeal is to preserve the *status quo* so that the appellate court may take the necessary time to make a reasoned decision.  *Id*. at 429-30.  There is "little doubt that . . . {a court} may fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation." *Bell v. Tsintolas Realty Co*., 430 F.2d 474, 482 (D.C. Cir. 1970).

The four factors relevant to issuance of a stay of judgment pending appeal are well-established:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *see also Standard Havens Prods., Inc. v. Gencor Indus., Inc*., 897 F.2d 511, 512 (Fed. Cir. 1990).  We analyze each of these factors below.

## II.    The United States Possesses A Likelihood Of Success On Appeal

On August 2, 2021, this Court granted our motion for partial stay of judgment pending appeal in *PrimeSource*, Slip. Op. 21-94, which addressed the same legal issue presented in this case.  In granting our motion for partial stay in that case, the Court explained that "{a} recent decision by the Court of Appeals for the Federal Circuit {} in *Transpacific Steel LLC v. United States*, No. 2020-2157, 2021 WL 2932512 (Fed. Cir. 2012) {} cause{d this Court} to conclude that defendants have made a sufficiently strong showing that they will succeed on the merits on appeal, so as to satisfy the first factor in {the} analysis." *PrimeSource*, Slip Op. 21-94 at 6.  The Court explained that the Federal Circuit in *Transpacific* had "vacated a judgment of this Court, rejecting a claim similar in some respects to a claim this Court found meritorious in {PrimeSource}," *id.*, which "potentially affects the outcome of this litigation." *Id.* at 9.  On those grounds, the Court concluded "that defendants ha{d} made a showing that they will succeed on the merits on appeal that is sufficient to satisfy the first factor in {the} analysis." *Id.*

That analysis is no less true here.  In resolving this case, the Court directly relies upon its decision in *PrimeSource*, and the rationale provided therein, to render judgment in favor the plaintiff.  If the Federal Circuit's decision in *Transpacific* "potentially affects the outcome" in *PrimeSource*, Slip Op. 21-94 at 9, then that same finding is also necessarily true as to this Court's decision in

11

*Oman*, which is based on this Court's decision in *PrimeSource*. The two cases are not materially distinguishable.

As we explained in our moving papers in *PrimeSource*, the Court need not repudiate its own order to conclude that the likelihood of success criterion is met. "Prior recourse to the {trial court} would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). It is sufficient for our purposes to show that "substantial legal questions" exist. *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987); *see also Bohler-Uddeholm Corp. v. United States*, 23 C.I.T. 801 (1999) (recognizing that it ruled against the plaintiffs, the Court nevertheless holds that there are "serious and substantial questions for appeal"); *Am. Grape Growers Alliance for Fair Trade v. United States,* 9 CIT 505, 507 (1985) (for purposes of determining whether a stay pending appeal is warranted, "the likelihood of success of an appeal is a somewhat anomalous factor …."). Respectfully, the Federal Circuit's decision in *Transpacific* shows that there is a legitimate question as to whether the Federal Circuit's reading of the statute in that case is also decisive in this case. *See Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473, 474 (E.D. Va. 2011) (granting stay, in part, because the "case {was} one of first impression that touches on

12

matters of substantial national importance"); *see also Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (granting stay and noting that "although the Court ultimately did not agree with defendants' position on the merits," the case involved "a novel and admittedly difficult legal question") (citation and internal quotation marks omitted)).

To preserve the *status quo ante* while the Federal Circuit resolves that issue, all we ask is that the Court stay the effectuation of its judgment while appeal in this case is pending.

## III.   The United States Will Be Irreparably Injured Absent The Requested Relief

Our request for a stay of the judgment is limited to five items: (a) staying the order to liquidate plaintiffs' subject entries; (b) staying the order to refund to plaintiffs all estimated duty deposits made for subject entries; (c) reinstating the suspension of liquidation of plaintiffs' subject entries; (d) reinstating the requirement for plaintiffs to continue to monitor their subject imports and foregone duty deposits, beginning on the effective date of their respective current continuous bonds, and to terminate and replace the continuous importation bond once the amount of foregone duty deposits reaches the amount of the bond, minus the baseline bond amount as calculated pursuant to CBP's general continuous bonding formula, along with reinstating the express authorization for CBP to deny release to plaintiffs' entries once plaintiffs' foregone Section 232 duty deposits reached the

13

amount of plaintiffs' current continuous bond, minus the respective baseline bond amounts as calculated pursuant to CBP's general continuous bonding formula, until plaintiffs either terminated and replaced their continuous bonds or used single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry; and (e) requiring Oman to provide retroactive single transaction bonds for subject entries made after Oman's forgone Section 232 duty deposits since March 21, 2021 reached [         ] (on May 20, 2021, with entry number [         ]), and until Oman terminates and replaces its current continuous bond.  This relief is necessary to maintain the *status quo ante* and to ensure that the public fisc is not irreparably harmed during the appeal.

Liquidation is "the final computation or ascertainment of the duties or drawback accruing on an entry." 19 C.F.R. § 159.1.  While 19 U.S.C. § 1504(b)(1) authorizes CBP to extend the time for liquidation, any lack of finality with respect to the Court's judgment is not in itself grounds for extension.  And once entries are liquidated, any claim as to the correct duties owed on plaintiffs' entries could become moot.  *See Sunpreme Inc. v. United States*, Slip op. 2017-1, 2017 Ct. Intl. Trade LEXIS 1, *9-10 (Jan. 5, 2017) (finding irreparable harm warranting a stay of judgment because liquidation of entries could moot the appeal).  Thus, absent a stay of the order to liquidate and reinstatement of the order to suspend liquidation,

14

CBP may be unable to assess and collect duties on entries that liquidate during the pendency of the appeal.[3]

Second, reinstatement of plaintiffs' obligation to maintain a sufficient bonding to secure the duties that will be lawfully due should the Government prevail on appeal will mitigate the risk to the United States of potentially millions of dollars in revenue loss. Absent plaintiffs' duty deposits, the bond is the only thing protecting the United States from revenue loss should the importer fail to fulfill its financial obligations once the entries liquidate and CBP issues bills.

The bond amount set through CBP's general continuous bonding formula will not cover foregone Section 232 duties. CBP's continuous bonding formula for importers is the greater of $50,000 or ten percent of the duties, taxes, and fees paid by the importer during the previous calendar year, rounded to the nearest $10,000 for all amounts $100,000 or less, and rounded to the nearest $100,000 for all amounts greater than $100,000. Lord Decl. ¶ 13. CBP's general continuous

---

[3] We acknowledge that, in three recent cases, the Government, relying on *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), represented that reliquidation of otherwise final entries is available in appropriate circumstances in a case brought pursuant to 28 U.S.C. 1581(i). *See, e.g, J. Conrad Ltd. v. United States*, Ct. Int'l Trade No. 20-00052 (Docket Entry No. 42, Defs.' Resp. to Pls.' Mots. for a Prelim. Inj. at 3 and Docket Entry No. 56, Defs.' Resp. to the Court's Order of April 7, 2020 at 1-2). After careful consideration, that is no longer the view of the Department of Justice. In any event, the Court need not decide whether court-ordered reliquidation is available in order to stay the judgment requiring liquidation of entries.

bonding formula for importers is intended to cover general risks to the revenue of the United States and general risks of legal noncompliance, such as the risk of an importer's failure to pay, or the underpayment of, the estimated duty deposits that are required by 19 U.S.C. § 1505(a), until CBP discovers such non-compliance. *Id.* Such bonding is intended for normal circumstances where estimated duties are usually deposited as required by 19 U.S.C. § 1505(a), and where the nonpayment of any estimated duties is a rare and/or unexpected occurrence. *Id*.

In this case, however, because pursuant to the Court's order CBP did not require the collection of estimated duty deposits for plaintiffs' entries of derivative articles, which would have otherwise been collected pursuant to Proclamation 9980, additional bonding is necessary to secure the revenue should the Government ultimately prevail in this action. Accordingly, the February 21 and March 4, 2020 orders required *full bonding* for the foregone Section 232 duty deposits. Specifically, the orders had initially required plaintiffs to obtain bonds sufficient to cover the full amount of Section 232 duty deposits anticipated to be foregone over the next six month period, and then to consult with the Government every six months, to "review the Section 232 duty deposits foregone and [plaintiffs'] estimated imports over the next six-month period," and to terminate and replace plaintiffs' bonds every six months to ensure that the full amount of Section 232 duty deposits foregone during every six month period is fully bonded.

*See Oman Fasteners*, No. 20-00037, ECF Docket Nos. 34 at 2; *Huttig*, No. 20-00045, ECF Docket Nos. 29 at 1.[4]

The order was fine-tuned to ensure that forgone Section 232 duty deposits were fully bonded should they become due if the Government prevails. This order dissolved with the entry of judgment, and reinstatement of these requirements is necessary to preserve the *status quo ante* pending appeal.

In the absence of an order requiring plaintiffs to monitor and maintain sufficient bond coverage to secure the Section 232 duties foregone during the pendency of the appeal, and requiring Oman to provide retroactive single transaction bonds for subject entries made after entry number [ ▮▮▮▮▮▮ ] and until the Oman terminates and replaces its current continuous bond, these potential duties will be completely unsecured. The potential amount of unsecured duty liability is not trivial. Based on Oman's monthly volume of subject imports from the effective date of its current continuous importation bond, March 21, 2021, until July 26, 2021, Oman may owe approximately $ [ ▮▮▮▮▮ ] per month in completely unsecured Section 232 duties, from May 20, 2021 until the court's final judgment in this action and subsequent bills to Oman, should the Government

---

[4] These orders were later amended on September 11, 2020 (for Oman) and January 20, 2021 (for Huttig) to make clear that plaintiffs were required to monitor their subject imports and foregone duty deposits and ensure their continuous bond obligations were met. *Oman*, No. 20-0037, ECF Docket Nos. 94 & 101.

17

prevail in this court action.  Lord Decl. ¶ 18.  And for Huttig, that amount is

approximately $ [　　　　　] per month once the amount of forgone Section 232

deposits for Huttig's subject entries reaches [　　　　], which will likely occur

well before the anniversary date of its current continuous bond on June 23, 2022.

*Id*. ¶ 18.

    For unliquidated entries, CBP could issue bills to the importers at

liquidation.  Absent a reinstatement of the order to suspend liquidation, plaintiffs'

subject entries must be liquidated within 6 months after the judgment's removal of

the suspension that was previously ordered.  *See* 19 U.S.C. § 1504(d).  Since two

of those six months have already passed since the entry of judgment, all of

plaintiffs' subject entries will likely liquidate before the Court of Appeals issues its

decision.

    For liquidated entries, absent a court order, CBP has no statutory mechanism

to regain the amounts of the unassessed and uncollected Section 232 duties, should

the duties become due if the Government were to prevail on appeal.  Should

defendants prevail on appeal, and should the court authorize reliquidation and bills

for the unpaid Section 232 duties, CBP has a statutory responsibility to assess and

collect revenue owed to the United States, including Section 232 duties on entries

of covered derivative merchandise.  Absent sufficient security, however, CBP (and

therefore the taxpayers) may not be able to easily (if at all) collect monies that are ultimately determined to be owed.[5]

Finally, irreparable harm to CBP comes in the form of administrative costs that it will incur in attempting to recoup any money paid out. *See Ledbetter v. Baldwin*, 479 U.S. 1309, 1310 (1986).

The United States' concern that entries may not be fully secured or that CBP will not be able to collect duties should they become due is not speculative. While there is no data specific to unpaid Section 232 duties, the magnitude of unpaid or uncollectible duties is serious. For example, CBP reported that, as of fiscal year 2019, there were 65,000 unpaid antidumping and countervailing duty (AD/CVD) bills totaling $4.5 billion (principal and interest) over a 25-year period.[6] This

---

[5] CBP has its own statutory authorities to require bonds and other forms of security. To avoid even the appearance that we are not complying with the judgment by requiring additional bonding relating to duties that this Court has found were imposed contrary to law, we request that the Court enter these security requirements as an explicit order. If the Court decides that an order to authorize CBP to deny entry absent sufficient bonding, as discussed above, is unnecessary, and that CBP already has sufficient authority and discretion to do so, then an order to suspend liquidation and to require plaintiffs to monitor its subject imports and forgone Section 232 duty deposits, and to terminate and replace its continuous importation bond when the amount of the forgone Section 232 duty deposits reaches the amount of the bond, minus the baseline amount calculated pursuant to CBP's general continuous bonding formula, would be sufficient, along with a stay of the order to refund the estimated duty deposits made by Oman and Huttig on subject entries despite the injunction.

[6] Department of Homeland Security, Fiscal Year 2019 Report to Congress: Antidumping and Countervailing Duty Collection of Outstanding Claims (Oct. 27,

significant debt owed to the United States cautions in favor of the modest security we request here.

Currently, the forgone Section 232 duty deposits for Oman's subject imports have already surpassed the amount of potential Section 232 duty liability that the parties and the court intended Oman's continuous importation bond to secure, and Huttig's bond amount will likely be surpassed very soon.  Based solely on Oman's monthly volume of subject imports from the effective date of its current continuous importation bond, March 21, 2021, until July 26, 2021, Oman may owe approximately $ [ █████████ ] per month in completely unsecured Section 232 duties, from March 21, 2021 until the court's final judgment in this action and subsequent bills to Oman, should the defendants prevail in this court action.  Lord Decl. ¶ 17.  That does not include the $ [ ████████ ] per month that Huttig would owe.  *Id*. ¶ 18.  Thus, unless the *status quo ante* prior to the entry of judgment on June 10, 2021 is reinstated pending appeal, the United States stands to lose potentially millions of dollars in lawful revenue should we ultimately prevail in this action.  *Id*. ¶ 19.

Where the United States is a party, the balance of equities and the public interest tend to "merge."  *Nken*, 556 U.S. at 435.  For the same reasons as

---

2019), *available at* https://www.dhs.gov/sites/default/files/publications/cbp_-_adcvd_collection_of_outstanding_claims_fy_2019_0.pdf

explained above, the public interest is served by maintenance of the *status quo* during any appeal.  Protection of the public fisc is an important consideration in deciding whether to stay the enforcement of a judgment pending the resolution of an appeal.  *See, e.g., Heraeus-Amersil, Inc. v. United States*, 1 C.I.T. 249, 270 (1985).  The public has an interest in protecting the revenue of the United States and in assuring compliance with the trade laws.  *See* 19 U.S.C. § 1623; *Am. Motorists Ins. Co. v. Villanueva*, 706 F. Supp. 923, 933 (Ct. Int'l Trade 1989). Indeed, "the protection of the public fisc is a matter that is of interest to every citizen."  *Brock v. Pierce County*, 476 U.S. 253, 262 (1986).  "'{P}rotecting the public fisc' is . . . a strong public interest."  *Global Dynamics, LLC v. United States*, 138 Fed. Cl. 207, 211 (2018) (quoting *Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 521 (2012)); *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997) (noting "the public interest at stake in effective and efficient enforcement of the national revenue laws").

Aside from protection of the fisc, the requested relief is in the public interest because "no governmental interest is more compelling than the security of the Nation."  *Haig v. Agee*, 453 U.S. 280, 307 (1981).  Any inability to collect Section 232 duties harms the domestic industry integral to the national security objectives that the tariffs were designed to protect.  Tariffs on steel and aluminum products were imposed because these products are "being imported into the United States in

such quantities or under such circumstances as to threaten to impair the national security of the United States." *Proclamation 9705 of March 8, 2018, Adjusting Imports of Steel Into The United States*, 83 Fed. Reg. 11,625, 11,626 ¶ 5 (Mar. 15, 2018); *Proclamation 9704 of March 8, 2018, Adjusting Imports of Aluminum Into the United States*, 83 Fed. Reg. 11,619 ¶ 4 (Mar. 15, 2018).  The President determined that application of tariffs to derivative products was "necessary and appropriate to address circumvention that is undermining the effectiveness of the adjustment of imports made" in the original actions on steel and aluminum imports and "to remove the threatened impairment of the national security of the United States found in those proclamations." *Proclamation 9980*, 85 Fed. Reg. at 5,283 ¶ 9.  If CBP cannot collect tariffs that may later be found to have been lawfully imposed, the objective of the Section 232 tariffs will be lost.

## IV.  A Stay Will Not Substantially Injure Other Parties

Our request for relief will not prejudice the plaintiff.  Suspending liquidation of its entries will promote administrative efficiency by eliminating the possibility that entries may have to be reliquidated.  At the end of the suspension of liquidation, plaintiffs' entries will be liquidated in the ordinary course, with interest if appropriate, as provided for by law.  Moreover, plaintiffs are not required to deposit any estimated Section 232 duties on their subject derivatives entries, so reinstating the suspension of the liquidation of its subject entries should not result

in any delay of any refunds, other than the relatively small amounts of estimated duty deposits made by Oman and Huttig on their subject entries despite the injunction (by failing to use the special injunction-based exclusion number to exclude their entries from the otherwise automated assessment of estimated duties under HTS 9903.80.03).  Thus, plaintiffs will not suffer any significant prejudice by suspending liquidation during the pendency of the appeal.

Reinstating the full bonding requirement will not substantially injure the plaintiffs.  Maintaining the same bonding requirement that the parties and the Court had previously agreed would secure plaintiffs' undeposited Section 232 duties, should the Government ultimately prevail in this action and the duties become due, will not be a new burden, but rather is an extension of the parties' agreement through the finite duration of the appeal.  This case is unlike *Transpacific Steel*, *LLC v. United States*, which has since been overturned on appeal, in which the Court found injury to the plaintiffs in the form of "continued denial of access to a substantial amount of capital" by delaying the return of duties already deposited.  474 F. Supp. 3d 1332, 1337 (Ct. Int'l Trade 2020).  While sureties generally require a premium to maintain a bond, that premium generally represents the risk to the surety that the importer will not pay assessed duties.  That risk of non-payment should not be transferred to the United States simply because we are exercising our right to appeal.

23

Moreover, our request is consistent with the expectations of the importing community that security or payment of duties are required, even while litigation is pending.  When a party challenges the determination or assessment of duties and fees in court, the importer does not generally obtain a refund of deposited tariffs or duties before a final conclusive determination by this Court.  For example, importers challenging CBP's denial of a protest must first pay "all liquidated duties, charges, or exactions."  28 U.S.C. § 2637(a).  Similarly, in cases brought pursuant to 28 U.S.C. § 1581(c), liquidation, once enjoined, remains suspended until there is a "conclusive court decision which decides the matter, so that subsequent entries can be liquidated in accordance with that conclusive decision."  19 U.S.C. § 1516a(e).  During this time, CBP retains estimated cash deposits.

To be sure, this case does not fit into either of these boxes.  This situation is unique in that plaintiffs are some of the only importers from which CBP cannot collect Section 232 duty deposits under Proclamation 9980, but which also is not currently required to monitor its foregone duty deposits and either replace its continuous bond once foregone duty deposits reach the amount of the bond minus the baseline bond amount, or use single transaction bonds to cover the foregone duty deposit on each entry.

Our request to maintain some measure of security for protection of the fisc until the legality of Proclamation 9980 has been conclusively determined is entirely consistent with these processes.

## CONCLUSION

For these reasons, we respectfully request that the Court enter an order identical to what it just ordered in *PrimeSource* while appeal in this case is pending—that is, an order: (1) staying the order to liquidate without assessment of Section 232 duties; (2) staying the requirement to refund with interest any deposits of estimated duties under Proclamation 9980 made by Oman and Huttig, (3) reinstating the order to suspend liquidation; (4) reinstating the order for plaintiffs to continue to monitor their subject imports and foregone duty deposits, beginning on the effective date of their respective current continuous bonds, and to terminate and replace their continuous importation bond once the amount of foregone duty deposits reaches the amount of the bond, minus the baseline bond amount as calculated pursuant to CBP's general continuous bonding formula, along with reinstating the express authorization for CBP to deny release to plaintiffs' entries once plaintiffs' foregone Section 232 duty deposits reached the amount of their current continuous bonds, minus the baseline bond amounts as calculated pursuant to CBP's general continuous bonding formula, until plaintiffs either terminated and replaced its continuous bond or used single transaction bonds in the amount of 100

25

percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry; and (5) requiring Oman to provide retroactive single transaction bonds for subject entries made after Oman's forgone Section 232 duty deposits since March 21, 2021 reached [███████████] (on May 20, 2021, with entry number [███████████]), and until the Oman terminates and replaces its current continuous bond.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Tara K. Hogan
TARA K. HOGAN
/s Aimee Lee
AIMEE LEE
Assistant Directors

/s Meen Geu Oh
MEEN GEU OH
Senior Trial Counsel
U.S. Department of Justice - Civil Division
Commercial Litigation Branch
P.O. Box 480
Washington, DC 20230
August 9, 2021                      Tel. (202) 307-0184
*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to ¶ 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the memorandum was prepared, the brief contains a total of **5,604** words.

<u>s/ Meen Geu Oh</u>

August 9, 2021

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| OMAN FASTENERS, LLC, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | **PUBLIC VERSION** |
| | ) | |
| v. | ) | |
| | ) | Consol. Ct. No. 20-00037 |
| THE UNITED STATES, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Upon consideration of the defendants' motion to stay of enforcement of the judgment through the time to appeal, and all responses thereto, it is hereby ORDERED that the motion is GRANTED; it is further ORDERED that:

The United States is enjoined from liquidating entries filed by Oman Fasteners, LLC (Oman), Huttig Building Products, Inc., and Huttig, Inc. (Huttig, collectively, as plaintiffs) affected by this litigation.

It is further ORDERED that any requirement to refund with interest any deposits of estimated duties under Proclamation 9980 made by Oman and Huttig shall be stayed.

It is further ORDERED that Oman shall continue to monitor its subject imports and foregone duty deposits, and shall terminate its continuous bond before such foregone duty deposits reach the amount of the continuous bond minus the $[

█████ ] baseline bond amount, and replace it with a new continuous bond in the amount of at least $[ ████████ ].

Provided that at least five business days have passed from entry of this order, once foregone duty deposits have reached the amount of the continuous bond minus the $[ █████ ] baseline bond amount for Oman, U.S. Customs & Border Protection (CBP) shall be permitted to deny release to Oman's entries until Oman terminates its current continuous bond and obtains a new continuous bond in the amount of at least $ [ ████████ ], or enters the merchandise using single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry.

It is further ORDERED that Oman shall provide retroactive single transaction bonds for subject entries made after Oman's forgone Section 232 duty deposits since March 21, 2021 reached [ ████████ ] (on May 20, 2021, with entry number [ ████████ ]), and until the Oman terminates and replaces its current continuous bond.

It is further ORDERED that Huttig shall continue to monitor its subject imports and foregone duty deposits, and shall terminate its continuous bond before such foregone duty deposits reach the amount of the continuous bond minus the $[

2

██████ ] baseline bond amount, and replace it with a new continuous bond in the amount of at least $[ ██████ ].

Provided that at least five business days have passed from entry of this order, once foregone duty deposits have reached the amount of the continuous bond minus the $[ ██████ ] baseline bond amount for Huttig, U.S. Customs & Border Protection (CBP) shall be permitted to deny release to Huttig's entries until Huttig terminates its current continuous bond and obtains a new continuous bond in the amount of at least $ [ ██████ ], or enters the merchandise using single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry

This order shall remain in effect until the mandate issues in the appeal of this judgment filed in the Court of Appeals for the Federal Circuit.

August ____, 2021                              _____
New York, NY                                                      JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

OMAN FASTENERS, LLC, et al.

Plaintiffs,

v.

UNITED STATES, et al.,

Defendants.

Before:  Timothy C. Stanceu, Judge
Jennifer Choe-Groves, Judge
M. Miller Baker, Judge

Consolidated Court No. 20-00037

## DECLARATION OF ACTING EXECUTIVE DIRECTOR BRANDON LORD
## IN SUPPORT OF DEFENDANTS' MOTION FOR STAY OF JUDGMENT
## TO MAINTAIN THE *STATUS QUO ANTE* PENDING APPEAL

I, Brandon Lord, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am the Acting Executive Director for Trade Policy and Programs, Office of Trade, U.S. Customs and Border Protection ("CBP"). I have held this position since March 2021. Previously, I served as the Deputy Executive Director for Trade Policy and Programs, Office of Trade, from November 2017.

2. As the Acting Executive Director for Trade Policy and Programs within CBP's Office of Trade, I lead CBP's strategic efforts to facilitate, enforce and administer priority international trade issues, including Tariffs and Trade Remedies, Intellectual Property Rights, Free Trade Agreements, Import Safety, Textiles, Antidumping and Countervailing Duty, as well the Duty and Import Tax Drawback Program administered by CBP.

3. This declaration is made in support of Defendants' motion for a partial stay of the judgment to maintain the *status quo ante* pending appeal.

4. Prior to the entry of judgment on June 10, 2021, the *status quo ante* was as follows:

    a. The liquidation of entries filed by Plaintiff Oman Fasteners LLC ("Oman") of articles subject to Proclamation 9980 of January 24, 2020, *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States*, 85 Fed. Reg. 5281 (January 29, 2020) ("subject imports"), was suspended pursuant to the February 21, 2020 injunction order in this action, and the liquidation of entries filed by Plaintiffs Huttig Building Products, Inc., and Huttig Inc. (collectively, "Huttig"), was suspended pursuant to the March 4, 2020 injunction order in Court No. 20-00045, which I have been advised has since been consolidated with this action.

    b. Collection of estimated duty deposits under Proclamation 9980 ("Section 232 duty deposits") for Oman's and Huttig's subject imports was forgone by CBP pursuant to these injunction orders. To override the automated collection of Section 232 duties, CBP provided to Oman and Huttig a special injunction code to use for their respective subject entries.

    c. Finally, as modified by the court's orders of September 11, 2020 (with respect to Oman) and January 20, 2021 (with respect to Huttig), the injunction orders had required Oman and Huttig to monitor their respective subject imports and foregone duty deposits, beginning on the effective dates of their respective current continuous bonds, and authorized CBP to deny release to Oman's and Huttig's

2

entries once their respective foregone Section 232 duty deposits reached the amount of their respective current continuous bonds, minus their respective baseline bond amounts, as calculated pursuant to CBP's general continuous bonding formula, until the importer either terminated and replaced its continuous bond or used single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry.

d. For Huttig the injunction, as amended by the court's January 20, 2021 order, had also provided that Section 232 duties would not be refunded prior to liquidation if such duties were deposited as a result of Huttig's failure to use, when filing the entry summary, the special injunction code that CBP provided for Huttig to override the automated collection of Section 232 duties for its subject merchandise.

5. Once the respective injunction orders dissolved by their terms with the entry of judgment, on June 10, 2021, the suspension of liquidation of the entries covering Oman's and Huttig's subject imports was removed.

6. To implement the February 21, 2020 (Oman) and March 4, 2020 (Huttig) injunction orders in this action, CBP programmed into the Automated Commercial Environment (ACE) special injunction-based exclusion numbers that Oman and Huttig use to exclude their respective subject imports from the otherwise automated collection of Section 232 duty deposits. Where the importer or broker fails to use the special exclusion number as

3

instructed, CBP cannot override the automated collection of Section 232 deposits that would otherwise be required for the subject imports.

7.  As of July 26, 2021, Oman has deposited a total of $███████ in Section 232 duties for its subject imports, despite the February 21, 2020 court order, due to Oman's failure to use the special injunction code that CBP provided for Oman to override the automated collection of Section 232 duties for its subject merchandise.

8.  As of August 4, 2021, Huttig has deposited a total of ███████ in Section 232 duties for its subject imports, despite the March 4, 2020 court order, due to Huttig's failure to use the special injunction code that CBP provided for Huttig to override the automated collection of Section 232 duties for its subject merchandise.

9.  Oman's current continuous importation bond covers all entries made on or after March 21, 2021, with a limit of liability of $███████

10. Oman's baseline bond amount, as calculated pursuant to CBP's general continuous bonding formula, is $███████

11. Huttig's current continuous importation bond covers all entries made on or after June 23, 2021, with a limit of liability of $███████

12. Huttig's baseline bond amount, as calculated pursuant to CBP's general continuous bonding formula, is ███████

13. CBP's general continuous bonding formula for importers is the greater of $50,000 or ten percent of the duties, taxes, and fees paid by the importer during the previous calendar year, rounded to the nearest $10,000 for all amounts $100,000 or less, and rounded to the nearest $100,000 for all amounts greater than $100,000. CBP's general continuous

4

bonding formula for importers is intended to cover general risks to the revenue of the

United States and general risks of legal noncompliance, such as the risk of an importer's

failure to pay, or the underpayment of, the estimated duty deposits that are required by

19 U.S.C. § 1505(a), until CBP discovers such non-compliance.  Such bonding is

intended for normal circumstances where estimated duties are usually deposited as

required by 19 U.S.C. § 1505(a), and where the nonpayment of any estimated duties is a

rare and/or unexpected occurrence.

14. Oman's total entered value of subject imports from the effective date of its current

   continuous importation bond, March 21, 2021, until July 26, 2021, was ████████████,

   and the total amount of forgone Section 232 duty deposits on Oman's subject imports

   since the effective date of Oman's current continuous importation bond until July 26,

   2021 is $████████.  Accordingly, the forgone Section 232 duty deposits for Omans's

   subject imports have already surpassed the ████████ in potential Section 232 duty

   liability that was intended by the parties and the court to be secured by Oman's current

   continuous importation bond.

15. Specifically, Oman's forgone Section 232 duty deposits since March 21, 2021 reached

   ████████ on May 20, 2021, with entry number ████████.

16. Huttig's total entered value of subject imports from the effective date of its current

   continuous importation bond, June 23, 2021, until August 4, 2021, was ████████, and

   the total amount of forgone Section 232 duty deposits on Huttig's subject imports since

   the effective date of Huttig's current continuous importation bond until August 4, 2021 is

   ████████  As of August 4, 2021, Huttig has not deposited any Section 232 estimated

duties on any subject imports made since the effective date of its current continuous

importation bond. Accordingly, the amount of forgone Section 232 duty deposits for

Huttig's subject imports as of August 4, 2021 is already at 82 percent of the ███████████

in potential Section 232 duty liability that was intended by the parties and the court to be

secured by Huttig's current continuous importation bond (the current ████████

continuous bond minus the ████████baseline as calculated pursuant to CBP's general

continuous bonding formula). If Huttig continues to import at the same rate, the forgone

Section 232 duty deposits for Huttig's subject imports will very soon surpass the

███████████) in potential Section 232 duty liability that was intended by the parties and

the court to be secured by Huttig's current continuous importation bond.

17. Oman and Huttig continue to import substantial volumes of subject imports. Since the

total amount of forgone Section 232 duty deposits on Oman's subject imports made since

the effective date of its current continuous importation bond has already surpassed the

amount of potential Section 232 duty liability that was intended to be secured by its

current continuous importation bond, and since the amount of forgone Section 232 duty

deposits for Huttig's subject imports will similarly soon surpass the amount of potential

Section 232 duty liability that was intended to be secured by Huttig's current continuous

importation bond, the Section 232 duties that will become due for current and future

subject imports, should the Government prevail in this court action, are currently

completely unsecured for Oman's subject entries made after entry number ███████████

██████ May 20, 2021, and will soon be similarly unsecured for Huttig. This means that if

the Government prevails in this court action, and Oman and Huttig are then for whatever

6

reason unwilling or unable to pay the Section 232 duties that would be due on their

subject imports, the United States would lose all lawfully owed revenue for the subject

imports beyond the ███████████   ███████████ limits of liability, respectively, on Oman

and Huttig's current continuous importation bonds (where ████████████████████

bond for Huttig was intended to cover general risks to the revenue of the United States

and general risks of legal noncompliance, such as the importer's failure to pay, or the

underpayment of estimated duty deposits for duties other than the Section 232 duties for

the subject imports at issue in this action).

18. Based on Oman's monthly volume of subject imports from the effective date of its

current continuous importation bond, March 21, 2021, until July 26, 2021, Oman may

owe approximately ██████████ per month in completely unsecured Section 232 duties,

from May 20, 2021 until the court's final judgment in this action and subsequent bills to

Oman, should the Government prevail in this court action.

19. Based on Huttig's monthly volume of subject imports from the effective date of its

current continuous importation bond June 23, 2021, until August 4, 2021, Huttig may

owe approximately $██████████ per month in completely unsecured Section 232 duties,

from the date on which Huttig is expected to imminently reach ████████████ in forgone

Section 232 duty deposits under its current continuous importation bond and until the

court's final judgment in this action and subsequent bills to Huttig, should the

Government prevail in this court action.

20. Unless the *status quo ante* prior to the entry of judgment on June 10, 2021 is reinstated

pending appeal, the United States stands to lose potentially millions of dollars in lawful

revenue should the Government ultimately prevail in this action.

Executed this 9ᵗʰ day of August, 2021.

Brandon Lord
Acting Executive Director
Trade Policy and Programs
Office of Trade
U.S. Customs and Border Protection