Slip Op. No. 21-144

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OMAN FASTENERS, LLC, et al., | |
| Plaintiffs, | Before: Jennifer Choe-Groves, Judge |
| | M. Miller Baker, Judge |
| v. | Timothy C. Stanceu, Judge |
| UNITED STATES, et al., | Consolidated Court No. 20-00037 |
| Defendants. | |

OPINION AND ORDER

[Ordering a stay pending appeal and related measures.]

Dated: October 15, 2021

*Michael P. House*, Perkins Coie, LLP, of Washington, D.C., for plaintiffs Oman Fasteners LLC, Huttig Building Products, Inc., and Huttig Inc. With him on the submissions were *Andrew Caridas*, *Shuaiqi Yuan*, *Jon B. Jacobs*, and *Brenna D. Duncan*.

*Tara K. Hogan*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendants. With her on the submissions were *Brian M. Boynton*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Aimee Lee*, Assistant Director, *Meen Geu Oh*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C.

Stanceu, Judge. Defendants move for a partial stay pending their appeal of the

judgment this Court entered in *Oman Fasteners, LLC v. United States*, Judgment (June 10,

2021), ECF No. 108 ("Judgment"), and for certain other measures related to protection of

potential government revenue.  In the Judgment, the court awarded remedies for

plaintiff Oman Fasteners, LLC ("Oman") and plaintiffs Huttig Building Products, Inc.

and Huttig, Inc. (collectively, "Huttig"), importers of steel nails, in a challenge to a

Presidential action taken under Section 232 of the Trade Expansion Act of 1962,

19 U.S.C. § 1862 ("Section 232"), imposing additional duties of 25% *ad valorem* on certain

imported products made of steel, including steel nails.[1]  *See* Proclamation 9980,

*Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the*

*United States*, 85 Fed. Reg. 5,281 (Exec. Office of the President Jan. 29, 2020)

("Proclamation 9980").  Plaintiffs oppose defendants' motion.

The court orders a stay of the Judgment, orders suspension of liquidation of the

entries affected by this litigation, and requires defendants to confer with Oman and

with Huttig to obtain agreements on bonding of entries made on and after June 10,

2021, for protection of the revenue potentially owing due to Proclamation 9980.

## I. BACKGROUND

The background of this action is set forth in our previous opinion and

supplemented herein.  *See Oman Fasteners, LLC v. United States*, 45 CIT __, 520 F. Supp.

3d 1332 (2021) ("*Oman*").  Other pertinent background is presented in decisions of this

Court adjudicating a claim substantially the same as the one adjudicated in this

---

[1] Citations to the United States Code herein are to the 2012 edition.  Citations to the Code of Federal Regulations are to the 2020 edition.

litigation. *See PrimeSource Bldg. Prods., Inc. v. United States*, 45 CIT __, 497 F. Supp. 3d

1333 (2021) ("*PrimeSource I*"), *PrimeSource Bldg. Prods., Inc. v. United States*, 45 CIT __, 505

F. Supp. 3d 1352 (2021) ("*PrimeSource II*").

 Oman and Huttig brought actions, now consolidated, challenging the lawfulness

of Proclamation 9980 on February 7, 2020, [Oman's] Compl. (Ct. No. 20-00037), ECF

No. 2; and February 18, 2020, [Huttig's] Compl. (Ct. No. 20-00045), ECF No. 5.  Shortly

thereafter, upon the consent of all parties, this Court entered preliminary injunctions

prohibiting defendants from collecting 25% cash deposits on Oman and Huttig's entries

of merchandise within the scope of Proclamation 9980 and also prohibiting the

liquidation of the affected entries.  Order (Ct. No. 20-00037) (Feb. 21, 2020), ECF Nos. 34

(conf.), 35 (public) ("Oman Prelim. Inj. Order"); Order (Ct. No. 20-00045) (Mar. 4, 2020),

ECF Nos. 29 (conf.), 30 (public) ("Huttig Prelim. Inj. Order").  The preliminary

injunctions also required plaintiffs to terminate their existing continuous bonds and

replace them with continuous bonds having a higher limit of liability to reflect the

additional duties Oman and Huttig otherwise would have been required to deposit.

Oman Prelim. Inj. Order 2; Huttig Prelim. Inj. Order 2.

 On March 9, 2020, in response to Oman's and defendants' Joint Notice of

Proposed Scheduling Order and Amended Injunction Order, the court ordered a stay of

Counts II and III of Oman's complaint "pending the Court's decision on the parties'

motions on Count I of the complaint."  Order 1 (Ct. No. 20-00037), ECF No. 46.  The

court amended the preliminary injunctive order to provide that the order would

continue in effect until the court entered judgment on Count I of Oman's complaint. *Id.*

at 2. On March 16, 2020, the court consolidated Ct. No. 20-00045 with Ct. No. 20-00037

*sub nom. Oman Fasteners, LLC v. United States*, stayed Counts II and III of Huttig's

complaint pending the resolution of Count I, and modified the preliminary injunction

entered in Ct. No. 20-00045 to provide for the order to continue in effect until judgment

was entered on Count I. Order, ECF No. 54.

On September 11, 2020, and January 20, 2021, with the consent of the parties, the

court amended Oman and Huttig's preliminary injunctions, respectively, to require

plaintiffs to "monitor [their] subject imports and foregone duty deposits" instead of

conferring with defendants prior to the expiry of their continuous bonds, and to

terminate and replace each continuous bond once the amount of foregone duty deposits

reached the amount of the bond, minus the baseline bond amount as calculated

pursuant to the general continuous bonding formula of U.S. Customs and Border

Protection ("Customs" or "CBP"). [Oman Prelim. Inj.] Order 2 (Sept. 11, 2020), ECF

Nos. 94 (conf.), 95 (public); [Huttig Prelim. Inj.] Order 2 (Jan. 20, 2021), ECF Nos. 100

(public), 101 (conf.).

In the *PrimeSource* litigation, this Court awarded summary judgment to plaintiff

PrimeSource Building Products, Inc., holding that Proclamation 9980 was issued

beyond the statutory time limits set forth in Section 232. *PrimeSource II*, 45 CIT at __,

505 F. Supp. 3d at 1357.  Thereafter, the parties in the instant litigation filed a Joint

Status Report, in which the defendants agreed that the decisions in *PrimeSource* were

"decisive as to Count I of Plaintiffs' Complaints" and that as a result there was "no

reason for this Court not to grant Plaintiffs' Motion for Summary Judgment on Count I

of the Complaints . . . and deny Defendant[s'] Motion to Dismiss Count I of Plaintiffs'

Complaints."  Joint Status Report 1–2 (Apr. 30, 2021), ECF No. 105.  Further, plaintiffs

agreed to move the court to lift the stay and dismiss Counts II and III of their

complaints.  *Id.*  Accordingly, in *Oman*, the court granted summary judgment in favor of

plaintiffs on Count I of their complaints and dismissed without prejudice Counts II

and III.  45 CIT at __, 520 F. Supp. 3d at 1339.

The amended preliminary injunctions dissolved upon the entry of judgment on

June 10, 2021.  *See* Judgment 1–2.  In the Judgment, this Court ordered, *inter alia*, that

defendants liquidate the duties affected by this litigation without the assessment of the

25% additional duties provided for in Proclamation 9980.  *Id.*

Defendants filed a notice of appeal of the Judgment, Notice of Appeal (Aug. 7,

2021), ECF No. 110, and shortly thereafter their motion for a stay pending appeal and

other measures, Defs.' Mot. for Stay of J. to Maintain the *Status Quo Ante* Pending

Appeal (Aug. 9, 2021), ECF No. 111 (conf.), (Oct. 14, 2021), ECF No. 119 (public) ("Defs.'

Mot. for Stay").  Defendants requested that, for the pendency of the appeal, the court:

(1) stay the requirement to liquidate Oman's and Huttig's entries without the

assessment of the 25% additional duties and reinstate the order to suspend liquidation;

(2) stay the requirement to refund with interest any deposits of estimated duties under

Proclamation 9980 made by Oman and Huttig; and (3) reinstate the requirements that

plaintiffs monitor their imports of merchandise covered by Proclamation 9980 and

maintain a sufficient continuous bond for the duty liability on these imports.  Defs.'

Mot. for Stay 1–2.  Plaintiffs filed their opposition to defendants' stay motion on

August 30, 2021.  Pls.' Opp'n to Defs.' Mot. for Stay of J. Pending Appeal, ECF Nos. 116

(conf.), 117 (public) ("Pls.' Opp'n").

## II. DISCUSSION

In exercising its traditional powers to further the administration of justice, a

federal court may stay enforcement of a judgment pending the outcome of an appeal.

*Nken v. Holder*, 556 U.S. 418, 421 (2009).  "While an appeal is pending from . . . [a] final

judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or

modify an injunction, the court may suspend, modify, restore, or grant an injunction on

terms for bond or other terms that secure the opposing party's rights."  USCIT R. 62(d).

When that judgment was rendered by a three-judge panel, "the order must be made . . .

by the assent of all its judges, as evidenced by their signatures."  *Id.*

The party seeking a stay pending appeal has the burden of demonstrating that

the stay is justified by the circumstances.  *Nken*, 556 U.S. at 433–34.  We consider four

factors in deciding whether defendants have met that burden: (1) whether defendants

have made a strong showing that they will succeed on the merits; (2) whether they will

be irreparably harmed absent the stay; (3) whether issuance of the stay will

substantially injure plaintiffs; and (4) where the public interest lies.  *See Hilton v.

Braunskill*, 481 U.S. 770, 776 (1987).  "There is substantial overlap between these and the

factors governing preliminary injunctions."  *Nken*, 556 U.S. at 434 (citing *Winter v. Nat.

Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  The "likelihood of success" and

"irreparable harm" factors, working together, are the most critical, and where the

United States is a party, the balance of equities and the public interest factors "merge."

*Id.* at 434–35.  We conclude that all four factors support our granting defendants'

motion.

## A. Success on the Merits

The decision of the Court of Appeals for the Federal Circuit ("Court of Appeals")

in *Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021) ("*Transpacific II*"),

causes us to conclude that defendants have made a sufficiently strong showing that

they will succeed on the merits on appeal.  In *Transpacific II*, the Court of Appeals

vacated a judgment of this Court in *Transpacific Steel LLC v. United States*, 44 CIT __, 466

F. Supp. 3d 1246 (2020) ("*Transpacific I*"), rejecting a claim similar in some respects to a

claim this Court found meritorious in *Oman, PrimeSource I,* and *PrimeSource II*.

The subject of the *Transpacific* litigation is a Presidential proclamation that

increased to 50% the then-existing 25% Section 232 duties on imports of steel products

from Turkey.  *See* Proclamation 9772, *Adjusting Imports of Steel Into the United States*, 83

Fed. Reg. 40,429 (Exec. Office of the President Aug. 15, 2018) ("Proclamation 9772").  In

*Transpacific I*, this Court held the proclamation invalid as untimely and as a violation of

equal protection.  Regarding the former, *Transpacific I* held that Proclamation 9772 was

issued after the close of the combined 105-day time period Congress established in the

1988 amendments to Section 232 (the time period codified as Section 232(c)(1), 19 U.S.C.

§ 1862(c)(1)), that commenced upon President Trump's receipt, on January 11, 2018, of a

report by the Secretary of Commerce issued under the authority of 19 U.S.C.

§ 1862(b)(3)(A) (the "2018 Steel Report").  The President's receipt of the 2018 Steel

Report was the procedural predicate for the issuance of a previously issued

proclamation, Proclamation 9705, *Adjusting Imports of Steel Into the United States*, 83 Fed.

Reg. 11,625 (Exec. Office of the President Mar. 15, 2018) ("Proclamation 9705").

       In *Transpacific II*, the Court of Appeals reversed the decision of this Court in

*Transpacific I*.  On the issue of the time limits added by the 1988 amendments to Section

232, the Court of Appeals reasoned that "[n]one of the new language in the statute, on

its own or by comparison to what came before, implies a withdrawal of previously

existing presidential power to take a continuing series of affirmative steps deemed

necessary by the President to counteract the very threat found by the Secretary."

*Transpacific II*, 4 F.4th at 1329.  The Court of Appeals stated that "[i]n this context, the

directive to the President to act by a specified time is not fairly understood as implicitly

meaning 'by then or not at all' as to each discrete imposition that might be needed, as

judged over time."  *Id.* at 1329–30.

   The instant litigation arose from somewhat different facts than did the

*Transpacific* litigation.  Instead of an upward adjustment to the tariffs imposed by a

previous Section 232 proclamation, the action contested here imposed, for the first time,

tariffs of 25% on a previously unaffected group of products.  These products, identified

in Proclamation 9980 as "Derivative Steel Articles," Proclamation 9980, 85 Fed. Reg. at

5,281, were different than the steel articles affected by the earlier Presidential

proclamation, Proclamation 9705.  As in *PrimeSource*, defendants here relied upon the

President's receipt of the 2018 Steel Report as the procedural basis upon which the

President issued Proclamation 9980, arguing that the President retained "modification"

authority over the previous Section 232 action.  *See* Defs.' Mot. to Dismiss Count I for

Failure to State a Claim 29–31 (Mar. 20, 2020), ECF No. 57; Joint Status Report 2 ("As

was true in the *PrimeSource* litigation . . . [d]efendants' position remains that the

procedural preconditions for the issuance of Proclamation 9980 were met by the

Secretary's 2018 Steel Report and the timely issuance of Proclamation 9705 . . . .").

Proclamation 9980 was signed by the President on January 24, 2020 (and published in

the Federal Register on January 29, 2020), long after the President's receipt, on

January 11, 2018, of the 2018 Steel Report.  In *PrimeSource I*, this Court held that, due to

the combined 105-day time limitation set forth in 19 U.S.C. § 1862(c)(1), the President's

authority to adjust tariffs on the "derivative" articles of steel had expired by the time Proclamation 9980 was issued, if that time period were presumed to commence upon the receipt of the 2018 Steel Report.  45 CIT at __, 497 F. Supp. 3d at 1356.  We concluded, later, that defendants had waived any defense that the procedural requirements of Section 232 were met based on any procedure other than one reliant upon the 2018 Steel Report.  *Oman*, 45 CIT at __, 520 F. Supp. 3d at 1338.

Our decision in *Oman* is also distinguishable from *Transpacific II* with respect to the time period that elapsed between the receipt of a Section 232(b)(3)(A) report from the Secretary of Commerce and the President's taking implementing action.  In issuing Proclamation 9980, the President acted more than two years after receiving the 2018 Steel Report.  In the *Transpacific* litigation, the analogous time period was approximately seven months.  In *Transpacific II*, the Court of Appeals rejected the appellee's argument that Congress sought, through the time limits, to ensure that the President will have timely information on which to act.  4 F.4th at 1332 ("Concerns about staleness of findings are better treated in individual applications of the statute, where they can be given their due after a focused analysis of the proper role of those concerns and the particular finding of threat at issue.").  That all said, we express no view on whether the factual distinction between this case and *Transpacific II* is material.

Even though *Transpacific II* and this case arose from somewhat different facts, we nevertheless conclude that the opinion of the Court of Appeals potentially affects the

outcome of this litigation.  In reaching this conclusion, we do not opine on whether

*Transpacific II* necessarily controls that outcome, i.e., whether the President's adjusting

of tariffs on derivatives of steel products falls within what the Court of Appeals termed,

in a different factual setting, "a continuing series of affirmative steps deemed necessary

by the President to counteract the very threat found by the Secretary," *id.* at 1329.  But

for purposes of ruling on the instant stay motion, it suffices that the discussion in

*Transpacific II* of the "continuing" nature of Presidential Section 232 authority is

expressed in broad terms.

Citing their petition in *Transpacific II* for panel rehearing and rehearing *en banc,*

plaintiffs argued that *Transpacific II* does not demonstrate defendants' likelihood of

success on the merits because it "is not final."  Pls.' Opp'n 5 (citing Combined Pet. for

Panel Reh'g and Reh'g *En Banc* of Pls.-Appellees (Ct. No. 2020-2157) (Aug. 23, 2021),

ECF No. 68).  Oman and Huttig rely on the "strong dissenting opinion" in *Transpacific II*

and "the fact that two panels of this Court . . . previously held presidential action

outside the statutory deadlines unlawful."  *Id.*  More recently, on September 24, 2021,

the Court of Appeals denied the petition for panel rehearing and the petition for

rehearing *en banc,* and the mandate has now been issued.  Order (Ct. No. 2020-2157),

ECF No. 76; *see* Mandate (Ct. No. 2020-2157) (Oct. 1, 2021), ECF No. 78.  We conclude

that defendants have made a showing that they will succeed on the merits on appeal

that is sufficient to satisfy the first factor in our analysis.

### B. Irreparable Harm in the Absence of the Requested Stay

In their motion for a stay, defendants request that, for the pendency of the appeal, the court: (1) stay the requirement to liquidate Oman and Huttig's entries without the assessment of the 25% additional duties and reinstate the order to suspend liquidation; (2) stay the requirement to refund with interest any deposits of estimated duties under Proclamation 9980 made by Oman and Huttig; and (3) reinstate the requirement that plaintiffs monitor their imports of merchandise covered by Proclamation 9980 and maintain a sufficient continuous bond for the duty liability on these imports. Defs.' Mot. for Stay 1–2. The court concludes that all three of these requested measures are necessary to prevent a form of irreparable harm to the United States. As we discuss below, that harm is the loss of the authority, provided for by statute and routinely exercised by Customs in every import transaction, to require and maintain such bonding as it determines is reasonably necessary to protect the revenue of the United States. Without the requested stay, the judgment entered in *Oman* would interfere with the exercise of that authority.

In Section 623(a) of the Tariff Act of 1930, Congress explicitly recognized the importance of security, such as bonding, to protect the revenue. In pertinent part, the relevant provision reads as follows:

> In any case in which bond or other security is not specifically required by law, the Secretary of the Treasury may by regulation or specific instruction require, or authorize customs officers to require, such

bonds or other security as he, or they, may deem necessary for the
protection of the revenue . . . .

19 U.S.C. § 1623(a). This authority is effectuated in the Customs Regulations and

applies generally to all import transactions. *See* 19 C.F.R. § 113. Due to the decision of

the Court of Appeals in *Transpacific II*, the government has established a likelihood that

ultimately it will assess Section 232 duties of 25% *ad valorem* on all entries at issue in this

litigation. In any ordinary import transaction, i.e., one not affected by litigation such as

this, Customs would exercise its statutory and regulatory authority to ensure that the

basic importer's bond (be it a continuous or single transaction bond) has a sufficient

limit of liability to secure the liability for all potential duties, such as the Section 232

duties that potentially will be owed by Oman and Huttig.

Importers' bonds are the ordinary means by which the government ensures that

the joint and several liability of the importer of record, and of its surety (up to the limit

of liability on the bond), will attach for the payment of all duties and other charges

eventually determined to be owed. Notably, in the situation posed by this litigation,

Oman and Huttig, due to the preliminary injunction that dissolved upon the entry of

judgment in this litigation, have made no cash deposits of estimated duties to cover

potential duty liability from Proclamation 9980. The continuous bond required by the

consent preliminary injunction was a substitute for these estimated duty deposits.

If an importer's bond has a limit of liability that is too low to cover the ordinary

duties plus the 25% duties, there is an inherent risk to the revenue, codified by statute

and effectuated by regulation, because one of the two parties that contractually could

have been bound to pay the duties—the surety—has liability limited by the face amount

of the bond.  In short, Congress contemplated in 19 U.S.C. § 1623 that the government

should have resort to two parties for assessed duty liability, the importer of record and

the surety.

    We do not base our decision to grant defendants' motion on a factual

determination that plaintiffs will be unable to satisfy their potential duty obligation.

Rather, we base it on the loss of the ability of the United States to exercise, as it would in

the ordinary course of administering import transactions, the statutory authority of

19 U.S.C. § 1623(a) to secure this potential duty liability.  That loss, absent the requested

stay, itself will constitute an irreparable harm to the United States.[2]  But for the

Judgment entered in *Oman*, the government would maintain, and continue into the

future, the requirement of bonding adequate to secure the revenue potentially owing on

---

[2] Because we find irreparable harm for the reasons noted, we need not, and do not, consider whether finality of liquidation itself constitutes potential irreparable harm to the United States.  Defendants claim they may be unable to collect duties on entries for which liquidation has become final under 19 U.S.C. § 1514(a).  *See* Defs.' Mot. for Stay of J. to Maintain the *Status Quo Ante* Pending Appeal 14–15 (Aug. 9, 2021), ECF No. 111 (conf.), (Oct. 14, 2021), ECF No. 119 (public).  Their argument is brought into question by precedent recognizing the authority of this Court, in a case brought according to 28 U.S.C. § 1581(i), to enforce its own judgments by ordering the reliquidation of the entries.  *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1311–12 (Fed. Cir. 2004).  The opinion in *Shinyei* reasoned that finality of liquidation under 19 U.S.C. § 1514 does not "preclude judicial enforcement of court orders after liquidation," as "the Court of International Trade has been granted broad remedial powers."  *Id.* at 1312.

the entries affected by this case.  In summary, were we to deny the government's

motion to stay the effect of the Judgment as to these entries, we would be interfering

with the exercise of the government's statutory authority under 19 U.S.C. § 1623(a).

Based on the intent Congress expressed in enacting that provision, we conclude that

any such interference is best avoided.

        In addition to enhanced bonding, the government's motion seeks a stay of our

order to liquidate without Section 232 liability the entries subject to this litigation and a

suspension of the liquidation of those entries pending the appeal.  We agree that these

steps are warranted.  The court notes the possibility that finality of liquidation, should it

attach to all entries associated with a particular continuous bond, could result in the

cancellation of such a bond and the resultant extinguishing of the liability of the surety.

Such a prospect would pose irreparable harm to the United States for the reasons the

court has discussed.  Because avoiding irreparable harm requires that the government

have the authority not only to require, but to maintain, sufficient bonding for potential

duty liability on all entries at issue in this case, we conclude that avoiding such harm

requires that the affected entries remain in an unliquidated state during the pendency

of the appeal.

## C. Balance of the Hardships

        The government also prevails on the third factor.  As the court has pointed out,

bonding that is inadequate to secure potential duties is deleterious to the interest of the

United States in the protection of the revenue, an interest protected by statute.

Defendants do not seek an order requiring cash deposits.  Instead, under the

government's motion, plaintiffs will incur the costs of maintaining enhanced bonding

for the potential Section 232 duty liability, i.e., the cost of the bond premiums.

As a result of the previous agreements, Oman and Huttig have bonding that

secures the estimated duty liability for all entries between February 8, 2020, until

June 10, 2021, the date judgment was entered in favor of these plaintiffs.  To address

bonding for entries after that time period, defendants request that the court directly

order reinstatement of the previous requirements for monitoring and "sufficient

bonding."  Defs.' Mot. for Stay 1–2.  Defendants' proposed order would impose specific

bonding requirements for each plaintiff.  [Proposed] Order 1–3 (Aug. 9, 2021), ECF

No. 111-1.

Oman argues that, in its particular circumstance, it will incur a substantial harm

if it must incur the cost of maintaining bonding for entries after June 10, 2021.  Pls.'

Opp'n 7.  Rather than impose the bonding and monitoring requirements directly, the

court considers it preferable that the plaintiffs be involved in negotiations of the

arrangements for the continuation of bonding on their respective entries.  Accordingly,

the court will direct defendants to consult with Oman and with Huttig with the

objective of reaching, and implementing, agreements under which the entries occurring

on and after June 10, 2021, and going forward throughout the appeal, will be covered by

bonding, but only such bonding as is reasonably necessary to secure the potential

revenue, including the Section 232 duties.  The court will direct, further, that should

defendants be unable to reach, and enter into, an agreement with a plaintiff or plaintiffs,

the involved parties shall file with the court a joint status report on the negotiations.

Oman argues, further, that the harm is magnified due to the same entries subject

to the stay being subject to "the as-yet uninitiated seventh administrative review

(covering entries between July 1, 2021 and June 30, 2022) and very likely eighth

administrative review (covering entries between July 1, 2022 and June 30, 2023)" in

*Certain Steel Nails From the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and*

*the Socialist Republic of Vietnam: Antidumping Duty Orders*, 80 Fed. Reg. 39,994 (Int'l Trade

Admin. July 13, 2015) ("*Oman Nails*").  *Id*. at 7–8.  Further, Oman states that if

Commerce follows its "normal regulatory schedule for conducting administrative

reviews, the final results of the seventh and eighth *Oman Nails* reviews would not be

published until the end of 2023 and 2024, respectively" with suspension of liquidation

"lifted thereafter, with actual liquidation of the entries occurring well into the following

year[s]."  *Id*. at 8.

That Oman's merchandise at issue is subject to separate administrative

proceedings, and any potential duties, separate from Section 232, stemming from those

proceedings, does not create a present burden sufficient to alter our analysis of the

balance of the hardships related to this litigation.

Characterizing its agreement to continued bonding at the time of the initial

preliminary injunction order as the "lesser of two extreme burdens," Oman submits

that "to ask Plaintiffs to accept the same bonding—for an even longer period—when

this Court has already held that Proclamation 9980 is unlawful and void . . . is an

entirely different matter." *Id.* at 9.  Plaintiffs also oppose the court's entering a stay that

applies retroactively to entries prior to the imposition of the stay because doing so

would "grant Defendants a bonding windfall for merchandise that entered the United

States at a time when the Court had declared Proclamation 9980 unlawful and void."

*Id.* at 10.  Oman's argument is unconvincing.  As we have explained, our conclusion that

the government potentially will have a claim to Section 232 revenue is based on certain

language in *Transpacific II*, to which we give due consideration.  The government's

proposed motion essentially would continue the balance struck by the parties in their

agreements for a consent injunction that maintained enhanced bonding while the

outcome of this case was not yet determined by this Court.  In comparison, denying the

government the authority to require such bonding on current and future entries poses a

hardship on the United States that, under the statutory scheme designed to ensure

adequate protection of the revenue, is unwarranted now that such potential duty

liability exists.

### D. The Public Interest

The public interest favors allowing the government to exercise its lawful

authority to protect the revenue, and potential revenue, of the United States, which in

this case involves a significant amount of potential duty liability.  *See* Defs.' Mot. for

Stay 20.

### III. Conclusion and Order

All four factors necessitate granting the government's motion to stay.  Upon the

court's consideration of the parties' motions, including defendants' motion to stay and

plaintiffs' response, and all other filings herein, and upon due deliberation, it is hereby

**ORDERED** that Defs.' Mot. for Stay of J. to Maintain the *Status Quo Ante* Pending Appeal (Aug. 9, 2021), ECF No. 111 (conf.), (Oct. 14, 2021), ECF No. 119 (public), be, and hereby is, granted in part and denied in part; it is further

**ORDERED** that the order of this Court to liquidate the entries subject to this litigation and to refund with interest any deposits of estimated duties under Proclamation 9980 made by Oman and Huttig, as stated in the Judgment entered on June 10, 2021, be, and hereby is, stayed pending the appeal of that Judgment before the United States Court of Appeals for the Federal Circuit; it is further

**ORDERED** that defendants be, and hereby are, enjoined, through the pendency of the appeal, from liquidating the entries affected by this litigation; it is further

**ORDERED** that defendants shall confer with Oman and Huttig with the objective of reaching, and entering into, an agreement with Oman and an agreement with Huttig on monitoring and such bonding for entries of merchandise within the scope of Proclamation 9980 that have occurred, and will occur, on or after June 10, 2021, as is reasonably necessary to secure potential liability for duties and fees, including potential liability for duties under Proclamation 9980; in the event of failure to reach agreement, the involved parties shall file a joint status report with the court no later than November 1, 2021; and it is further

**ORDERED** that this Order shall remain in effect until issuance of a mandate of the United States Court of Appeals for the Federal Circuit in the pending appeal of the Judgment entered by the court in this litigation.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge


/s/ M. Miller Baker
M. Miller Baker, Judge


/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge


Dated: October 15, 2021
New York, New York