UNITED STATES COURT OF INTERNATIONAL TRADE
Hon. Timothy C. Stanceu, Hon. Jennifer Choe-Groves, Hon. M. Miller Baker

_____
                                          )
OMAN FASTENERS, LLC, *et al.*,            )
                                          )
        Plaintiffs,                       )
                                          )
    v.                                    )    Consol. Court No. 20-00037
                                          )
THE UNITED STATES; *et al.*,              )    NONCONFIDENTIAL:
                                          )    Redacted information on
        Defendants.                       )    pp. 1–3, 6–12, 14–17
                                          )
_____ )

### OMAN FASTENERS' EMERGENCY MOTION TO COMPEL DEFENDANTS' COMPLIANCE WITH THE COURT'S APRIL 15, 2022 ORDER

Plaintiff Oman Fasteners, LLC ("Oman Fasteners") respectfully requests the Court to compel Defendants' compliance with the Court's Opinion and Order of April 15, 2022, Slip. Op. No. 22-35, ECF No. 133 ("Security Order"). The Security Order required Oman Fasteners to "make duty deposits for potential Section 232 duty liability," and allowed Oman Fasteners, "should it so choose, {to} discontinue the duty deposits . . . after reaching agreement with defendants on the resumption of bonding." Oman Fasteners has fully complied. Defendants, however, have not. Instead, Defendant U.S. Customs and Border Protection ("CBP") has failed to comply with the Security Order by (i) refusing to agree to future bonding of potential Section 232 liability irrespective of the amount of security Oman Fasteners provides, and (ii) refusing to fully honor Oman Fasteners' current customs bond after causing Oman Fasteners to increase that bond to [

    ].

In the long term, Defendants' unlawful and unreasonable actions would artificially inflate Oman Fasteners' dumping margin in the ongoing antidumping proceeding involving *Certain Steel Nails from the Sultanate of Oman*, No. A-523-808 ("*Oman Nails*"), permanently costing Oman Fasteners millions of dollars. In the immediate term, Defendants' actions deprive Oman Fasteners of the use of [            ] in additional bond collateral, which Defendants refuse to apply toward Oman Fasteners' potential Section 232 liability.

Because the [            ] in Section 232 bonding which Defendants will allow will be exhausted by early October, the Court should consider this motion expeditiously. Defendants have agreed to submit their response to this motion no later than Monday, September 26, 2022. Oman Fasteners requests that the Court hold any hearing on this motion no later than Wednesday, September 28, 2022, and issue its ruling by the first week of October so that Oman Fasteners will not suffer harm as a result of Defendants' failure to comply with the Court's Security Order.

## PROCEDURAL BACKGROUND

On February 21, 2020, pursuant to an agreement reached between Oman Fasteners and Defendants, the Court ordered Oman Fasteners to begin bonding of potential Section 232 liability. ECF No. 34. On June 10, 2021, the Court entered judgment for Oman Fasteners and its co-plaintiffs and ordered "that plaintiffs are no longer obligated to post a continuous bond to cover duties enacted pursuant to Proclamation 9980." ECF No. 108.

On August 9, 2021, Defendants filed their Motion for Stay of Judgment to Maintain the *Status Quo Ante* Pending Appeal ("Stay Motion"). ECF No. 111. Therein,

Defendants sought reimposition of bonding. Specifically, Defendants claimed that "{r}einstating the full bonding requirement will not substantially injure the plaintiffs," because "{m}aintaining the same bonding requirement that the parties and the Court had previously agreed would secure plaintiffs' undeposited Section 232 duties . . . will not be a new burden, but rather is an extension of the parties' agreement through the finite duration of the appeal." *Id.* at 23. The Stay Motion never discussed requiring Oman Fasteners to pay duty deposits. Rather, in the proposed order attached to the Stay Motion, Defendants sought an order that:

> Oman shall continue to monitor its subject imports and foregone duty deposits, and shall terminate its continuous bond before such foregone duty deposits reach the amount of the continuous bond minus the $[      ] baseline bond amount, and replace it with a new continuous bond in the amount of at least $[      ].

ECF No. 111-1 at 2.

On October 15, 2021, the Court issued its Opinion and Order granting Defendants a stay pending appeal ("Stay Order"). Slip Op. No. 21-144, ECF No. 120. The Stay Order noted that "Defendants do not seek an order requiring cash deposits. Instead, under the government's motion, plaintiffs will incur the costs of maintaining enhanced bonding for the potential Section 232 duty liability, i.e., the cost of the bond premiums." *Id.* at 16. The Court stated that it would "direct defendants to consult with Oman {Fasteners} . . . with the objective of reaching, and implementing, agreements under which the entries . . . going forward throughout the appeal, will be covered by bonding, but only such bonding as is reasonably necessary to secure the potential revenue, including the Section 232

duties." *Id.* at 16-17. The Court reasoned that Defendants' request "essentially would continue the balance struck by the parties in their agreements for a consent injunction that maintained enhanced bonding while the outcome of this case was not yet determined by this Court." *Id.* at 18.

On January 5, 2022, the parties submitted their Joint Notice Regarding Court's Order Concerning Monitoring and Continuous Bonding ("Joint Notice"), ECF No. 128, explaining their inability to reach agreement as to bonding for Oman Fasteners. Defendants again advocated for imposition of a bonding requirement, noting that this would place it in the same position as the other two importers of steel nails that had prevailed in their challenges to Proclamation 9980, whose judgments were likewise stayed pending appeal:

> All three importers agreed to this modified arrangement prior to the entry of judgment, which dissolved the modified bonding orders, and PrimeSource and Huttig have also agreed that the same arrangement is reasonably necessary to secure their subject entries in accordance with the {Stay Order}. Only Oman Fasteners claims that this previously negotiated arrangement is no longer appropriate, and insists that we accommodate yet another workaround. But Oman Fasteners provides no meaningful reason why it should be selected out, amongst every other importer, for such unique and special treatment.

*Id.* at 10-11. In the alternative, Defendants suggested that if Oman Fasteners "is unwilling to pay for bonding, but is willing to deposit duties . . . , Oman Fasteners can simply deposit the estimated duties on its subject entries with CBP instead . . . ." *Id.* at 11. This was the first time Defendants mentioned the possibility of duty deposits rather than bonding.

4

In response, Oman Fasteners proposed to deposit sufficient funds to cover its potential Section 232 liability into an escrow account, explaining that an escrow account would provide Defendants equal or better security than bonding, while creating a lower burden for Oman Fasteners. *Id.* at 3-4. Oman Fasteners further stated that "{t}o the extent Defendants now propose that Oman Fasteners deposit the Section 232 duties on a contingent basis at the time of entry {as an alternative to bonding}, that proposition is even less workable." *Id.* at 5. Oman Fasteners explained that requiring duty deposits would place it in the worst position, because, in addition to tying up Oman Fasteners funds for a prolonged period of time (like bonding), duty deposits would artificially inflate Oman Fasteners' dumping duty in *Oman Nails*. *Id.* at 6.

On March 18, 2022, Defendants filed their "Supplemental Notice Concerning the Parties' Inability to Reach Agreement on Continuous Bonding, and Request for Continuous Bonding" ("Supplemental Notice"). ECF No. 129. Defendants complained that "Oman Fasteners has replaced its continuous importation bond with a bond that provides for no additional security to cover the foregone Section 232 estimated duty deposits . . . ." *Id.* at 5. Defendants "believe{d} that an appropriate resolution {would be} that the Court enter an order to reinstate the status quo pending appeal," i.e., reinstate bonding. "Or in the alternative, {Defendants} request{ed} that the Court order Oman Fasteners to deposit the estimated Section 232 duties on its subject entries . . . ."

On April 15, 2022, the Court issued the Security Order. After rejecting Oman Fasteners suggestion of an escrow account, the Court:

> ORDERED that plaintiff Oman Fasteners shall make duty

> deposits for potential Section 232 duty liability on all consumption entries affected by this litigation that are made after the date of this Opinion and Order and during the remainder of the stay pending defendants' appeal of this Court's judgment in this litigation; it is further
>
> ORDERED that Oman Fasteners, should it so choose, may discontinue the duty deposits ordered herein after reaching agreement with defendants on the resumption of bonding to secure the protection of the revenue for potential Section 232 duty liability and putting such bonding into place . . . .

Slip Op. at 22-35, ECF No. 133 at 9-10.

## FACTUAL BACKGROUND

Upon issuance of the Security Order, Oman Fasteners complied and began depositing Section 232 duties at the time of entry and elected, as a temporary measure, not to immediately resume bonding potential Section 232 liability.

On August 5, 2022, CBP sent Oman Fasteners a letter advising that Oman Fasteners' continuous customs bond was insufficient, and had to be replaced with a bond in the amount of at least [        ] by September 5, 2022. Prompted by the need to increase its customs bond in any event, and in order to prevent material future harm from continued payment of the duty deposits, Oman Fasteners decided to resume bonding of potential Section 232 liability. Accordingly, undersigned counsel sent an email titled "Oman Fasteners 232 bonding – Urgent" to Defendants' counsel on August 17, 2022 (at 11:43 am ET) to reach agreement on the size of an adequate Section 232 bond:

> I have an urgent request on behalf of Oman Fasteners, which would like to resume bonding 232 entries pursuant to the CIT's April 15, 2022 order. We are prepared to put up a [        ] continuous bond to secure the 232 liability, and to monitor our entries and terminate and replace that bond once it

6

> is exhausted. This is consistent with your prior request for bonding of at least [          ].
>
> We are under extreme time pressure, because Oman Fasteners received the attached bond insufficiency notice from CBP requiring Oman Fasteners to . . . have a new bond in place by September 5. To be able to meet this deadline, we require your confirmation of the new 232 bonding arrangement, and for CBP to issue a new Section 232 Product Exclusion code for use in ACE. It appears that the prior code [          ] is no longer active.

Exhibit A at 3–4.[1]

On August 19, 2022 (at 11:40 am ET), Defendants' counsel responded, accepting Oman Fasteners' proposal and confirming that CBP would take the steps necessary to enable Oman Fasteners to cease payment of Section 232 duty deposits at entry:

> Just heard back from CBP.
>
> First, CBP is fine with OF posting a [          ] bond, with the understanding that CBP expects that the importer will exhaust this bond [     ] after the proposed bond effective date, at which point CBP will be able to issue a new bond sufficiency notice.
>
> Second, CBP says the exclusion number [          ] will be re-activated on Thursday, August 25{.}

Exhibit A at 2. Based on this written agreement and assurance, and under time pressure from the impending September 5 deadline, Oman Fasteners finalized its bond application that same day and submitted it to its surety.

The following Monday, August 22, 2022 (at 5:26 pm ET), Defendants' counsel

---

[1] Only the directly relevant portions of each email are quoted herein. Please see Exhibit A for the complete correspondence.

emailed again, this time to express that CBP had misgivings about its earlier agreement:

> Hey Andrew, looks like CBP is not thrilled about the amount of the bonding OF is proposing given how quickly it may be exhausted based on running practice. I have a call w/ them tomorrow PM but I suspect they will insist that OF get a higher bond amount.

Exhibit A at 1. Undersigned counsel promptly replied (at 5:56 pm ET), to explain that Oman Fasteners had already submitted the bond application, and thus further changes may not be possible:

> Given the tight timeline in CBP's deficiency notice, we already submitted the paperwork on Friday for the new bond, so I don't think we can change that now. We relied on CBP's representations below to become compliant within CBP's deadlines.

Exhibit A at 1.

On August 23, 2022 (at 4:59 pm ET), after having conferred with CBP, Defendants' counsel telephoned to reiterate CBP's concern that the [          ] bond amount was too small. Undersigned counsel indicated that he could confer with Oman Fasteners, and, if Oman Fasteners was prepared to offer a higher bond, could consult with the surety to see whether a change to the bond amount was still possible. Defendants' counsel requested that undersigned counsel do so.

On August 24, 2022, having conferred with Oman Fasteners and obtained approval for an increased [          ] bond amount, undersigned counsel emailed Oman Fasteners' customs broker, requesting that the customs broker consult with the surety to determine whether it was still possible to change the bond amount. Later that day (at 5:09 pm ET), he called to inform Defendants' counsel that Oman Fasteners was

8

prepare to increase the bond amount to [          ] and pending confirmation from the surety that the increase was still possible. Defendants' counsel stated his belief that the [         ] bond amount would be more acceptable to CBP.

On the morning of August 25, 2022, undersigned counsel learned that the surety—instead of confirming that the increase was still possible—had terminated Oman Fasteners pending [          ] bond application, and started a new [          ] bond application. Given the looming September 5, 2022 deadline, and based on Defendants' counsel's representation that CBP would find a [          ] bond more acceptable, Oman Fasteners took immediate action to finalize the new bond application and wire the remaining collateral to the surety. That same morning (at 10:36 am ET), undersigned counsel called to advise Defendants' counsel of these developments and to explain that Oman Fasteners would be acceding to CBP's desire for a higher bond, i.e. the new [          ] bond application. That afternoon (at 3:29 pm ET), after speaking with CBP, Defendants' counsel called back to advise (for the first time) that CBP would not agree to *any* future bonding of potential Section 232 duties after exhaustion of the new [          ] bond. Undersigned counsel responded that CBP's position was precluded by the Security Order, and that Oman Fasteners would turn to the Court if necessary. However, both undersigned and Defendants' counsel agreed that this issue could be deferred until closer to the exhaustion of the new bond. Defendants' counsel did not raise any objection to the [          ] bond amount on either of two calls on August 25, 2022.

Five days later, on August 30, 2022 (at 10:01 am ET), Defendants' counsel called

to convey that CBP was prepared to take the steps necessary to allow Oman Fasteners to resume bonding 232 duties—steps that CBP had previously committed that it would complete by August 25, *see* discussion of August 19 email, above—subject to certain conditions. Chief among these, and the only one that remains relevant, was that Oman Fasteners would only be permitted to use *the first* [           ] of its new [           ] bond to secure potential Section 232 liability, and would therefore need to resume paying Section 232 duty deposits after exhausting the [           ]. That afternoon (at 1:49 pm ET), Defendants' counsel clarified CBP's position that Oman Fasteners would only be allowed to use the first [           ] of its new customs bond to secure potential Section 232 liability.²

On the August 30 calls, undersigned counsel stated that CBP was violating the Security Order and acting in bad faith, given that Oman Fasteners had increased its new bond only in response to Defendants' counsel's representations that CBP insisted that [           ] was too low. Undersigned counsel explained that Oman Fasteners was now irrevocably committed to the new [           ] bond, including depositing [           ] of collateral, and CBP's complete reversal meant that Oman Fasteners would get only [           ] in Section 232 duty deposit savings in exchange for that committed collateral. Undersigned counsel encouraged Defendants' counsel to confer with CBP, and informed him that if CBP did not reverse its position and allow Oman Fasteners to use

---

² Defendants' counsel explained that CBP only felt bound—by the August 19 email—to honor bonding up to [           ], which, in CBP's view included [           ] in baseline bond amount, leaving [           ] for potential Section 232 liability.

NONCONFIDENTIAL

the full bond amount, Oman Fasteners would be forced to seek immediate emergency relief from the Court because the [          ] would be exhausted by early October.

On September 15, 2022, Defendants' counsel emailed to confirm that CBP would not budge from its position that Oman Fasteners could only use [          ] of its [          ] bond as security against potential Section 232 liability.

## ARGUMENT

The Security Order gives Oman Fasteners the option to secure potential Section 232 liability through an enhanced customs bond in lieu of paying Section 232 duty deposits at entry. That option is contingent on Oman Fasteners and Defendants, in good faith, agreeing on the amount of that bond. Defendants' refusal to allow Oman Fasteners to bond in lieu of paying duty deposits is therefore contrary to the Security Order and unlawful.

In addition, Defendants' 13th-hour decision—after causing Oman Fasteners to secure a higher [          ] bond by indicating that the agreed-upon bond amount would be insufficient—to limit Oman Fasteners' bonding to just the first [          ] of its bond, is patently unreasonable and evidence of Defendants' bad faith.

The Court gave Oman Fasteners the option to bond because paying Section 232 duty deposits materially harms Oman Fasteners, by artificially inflating Oman Fasteners' dumping duty in the administrative reviews of the antidumping order on *Oman Nails*, costing Oman Fasteners millions of dollars in additional duty payments. In addition, Defendants' bad faith nullification of the majority of Oman Fasteners' current bond immediately deprives Oman Fasteners of the value of [          ] of deposited bond

11

collateral.

Accordingly, the Court should order Defendants to comply with the Security Order by honoring the full [            ] amount of Oman Fasteners' current bond and allowing Oman Fasteners to continue to rely on bonding to secure its potential Section 232 liability.

I.  **DEFENDANTS VIOLATE THE COURT'S ORDER BY REFUSING TO ALLOW OMAN FASTENERS TO BOND ITS POTENTIAL SECTION 232 LIABILITY**

Defendants' refusal to permit Oman Fasteners to bond its potential Section 232 liability violates both the letter and spirit of the Security Order.

The Security Order explicitly allows Oman Fasteners to "choose" to "discontinue the {Section 232} duty deposits after reaching agreement with defendants on the resumption of bonding to secure the protection of the revenue for potential Section 232 duty liability and putting such bonding into place." Slip Op. No. 22-35, ECF No. 133 at 9-10. The Court gave Defendants the discretion to participate—in good faith—in negotiations regarding the size of the bond necessary to "secure the protection of the revenue," but did not permit Defendants to reverse course and refuse to allow bonding of Section 232 liability.

That the Court would give Oman Fasteners the option to bond is hardly surprising, given that Defendants consistently argued for bonding from their Stay Motion in August 2021 until their Supplemental Notice in March 2022. Moreover, throughout that eight-month process, Defendants consistently justified their requested relief to the Court by noting that they merely sought to return to the *status quo ante* the Court's judgment: the

Case 1:20-cv-00037-TCS-JCG-MMB   Document 137   Filed 09/20/22   Page 13 of 17

NONCONFIDENTIAL

parties' agreement regarding bonding. *See, e.g.,* ECF No. 111 at 23 ("Maintaining the same bonding requirement that the parties and the Court had previously agreed {on} . . . will not be a new burden, but rather is an extension of the parties' agreement through the finite duration of the appeal."); ECF No. 128 at 10 ("All three importers agreed to this modified arrangement prior to the entry of judgment, . . . and {the other two successful Proclamation 9980 litigants} have also agreed that the same arrangement is reasonably necessary to secure their subject entries in accordance with the court's {Stay O}rder.").

Defendants did not even suggest requiring Oman Fasteners to post duty deposits until the parties' Joint Notice in January 2022, and did so only as an alternative if "Oman Fasteners is unwilling to pay for bonding, but is willing to deposit duties . . . ." ECF No. 128 at 11. However, as Oman Fasteners explained in the Joint Notice, duty deposits represent the worst-case scenario for Oman Fasteners, because they would result in artificially higher dumping duties in the administrative reviews of the *Oman Nails* case. ECF No. 128 at 5-6. Thus, even at that late date in the proceedings leading up to the Security Order, duty deposits were only Defendants' second choice, and Oman Fasteners' third.

Given the clear language of the Security Order, and the equally clear procedural history leading to that Order, Defendants cannot seriously now claim that they have the discretion to completely refuse to negotiate with Oman Fasteners regarding bonding of potential Section 232 liability. Nor should the Court permit Defendants to simply ignore the Courts' Orders, or the bargain that Defendants themselves struck.

## II. DEFENDANTS COMPOUND THEIR VIOLATION OF THE COURT'S ORDER BY REFUSING TO EVEN FULLY HONOR OMAN FASTENERS' CURRENT BOND

Defendants' reversal of position regarding future bonding on August 25, 2022, was unreasonable and unlawful for the reasons discussed above. But Defendants' further reversal on August 30, 2022, smacks of outright bad faith.

In their Stay Motion, Defendants asked the Court to require Oman Fasteners to secure "a new continuous bond in the amount of at least $ [         ]." ECF No. 111-1 at 2. To meet Defendants' wishes, Oman Fasteners offered a new bond of [         ]. *See* Exhibit A at 3–4. On August 19, Defendants agreed to that offer and affirmed that CBP would take the steps necessary to allow Oman Fasteners to resume bonding Section 232 duties by August 25, 2022. *See* Exhibit A at 2. However, when Defendants' counsel informed Oman Fasteners three days later that CBP wanted a higher bond, *see* Exhibit A at 1, Oman Fasteners chose to appease CBP.

Oman Fasteners' surety may have acted rashly in terminating the [         ] bond application and initiating the [         ] bond application without instructions from Oman Fasteners to do so. Nevertheless, after being told by Defendants' counsel that the CBP would likely find the [         ] bond more palatable, and given the impending September 5 deadline, Oman Fasteners acted reasonably in finalizing the application for the [         ] bond. Moreover, after Oman Fasteners informed Defendants' counsel on the morning of August 25 that it would be moving forward with the [         ] bond, Defendants' counsel conferred with CBP and called Oman Fasteners' counsel back that afternoon, but did not object to the size of the new bond.

Only on August 30—five days later, and four business days before Oman Fasteners' new bond had to be active—did CBP communicate its 180-degree reversal to Oman Fasteners. Despite its prior demands for a bond larger than the [      ] initially agreed to, and its lack of objection to the [      ] bond, CBP now took the position that the new bond was too high. As a result, CBP would only allow Oman Fasteners to apply [      ] of the bond towards Section 232 liability. Oman Fasteners also learned that CBP had not yet activated the Section 232 exclusion code that would allow Oman Fasteners to resume bonding Section 232 liability—despite CBP's prior representation that it would do so by August 25.

CBP's post-agreement demands for a higher bond (which caused Oman Fasteners to increase the new bond from [      ]), CBP's sudden and belated reversal of position (which means that Oman Fasteners will get only [      ] in duty deposit savings from its [      ] in committed bond collateral), and CBP's failure to take—on the date promised—steps necessary to enable Oman Fasteners to begin bonding, all show that CBP did not negotiate with Oman Fasteners in good faith. As a result of CBP's bad faith, Oman Fasteners will need to resume paying Section 232 duty deposits by early October, and Oman Fasteners will have to do so without access to the additional [      ]³ in cash tied up as collateral on a bond Oman Fasteners cannot use.

---

³ The cited [      ] figure is an approximation, because Oman Fasteners would be required to maintain some baseline level of customs bonding to secure against non-Section 232 duty liability. However, that baseline bond is relatively insignificant.

### III. DEFENDANTS VIOLATIONS OF THE COURT'S ORDER THREATEN OMAN FASTENERS WITH IMMINENT MATERIAL HARM

The dignity of the Courts' Security Order is not the only victim of Defendants' recent actions. The Security Order gave Oman Fasteners the option to bond because paying Section 232 duty deposits materially harms Oman Fasteners.

In antidumping proceedings, the Department of Commerce deducts Section 232 duty deposits from the U.S. sales prices used to calculate whether the respondent prices its merchandise fairly. If Oman Fasteners deposits Section 232 duties—even if it does so with the full expectation that those deposits will be refunded once the Federal Circuit affirms this Court's judgment—Commerce will deduct 20 percent from the sales price of each U.S. sale of steel nails that are subject to Proclamation 9980. As a result, were Oman Fasteners to pay Section 232 duty deposits for a significant part of the 12-month period of review ("POR") that constitutes each annual review of the antidumping order on *Oman Nails*, we estimate that Oman Fasteners' dumping margin would increase by [

], resulting in additional dumping duties of [

].[4] After conclusion of the relevant annual antidumping review, Oman Fasteners would be unable to recover those additional dumping duties—even if at a later date CBP is forced to refund all of the underlying Section 232 duty deposits.

---

[4] While Oman Fasteners did elect to pay duty deposits briefly following entry of the Security Order, that does not negate the material harm that Oman Fasteners would suffer if forced to pay duty deposits for a prolonged period of time. Notably, the Security Order issued on April 15, 2022, [

]

**NONCONFIDENTIAL**

Additionally, by depriving Oman Fasteners of most of the value of its current [          ] bond, Defendants harm Oman Fasteners twice over. Not only will Oman Fasteners be required to resume duty deposits—and suffer the dumping duty losses described above—months earlier, but Oman Fasteners is also immediately deprived of the value of [          ] of deposited bond collateral.

## CONCLUSION

For the above reasons, Oman Fasteners respectfully requests that the Court order Defendants to honor the full amount of Oman Fasteners' current Section 232 bond and permit Oman Fasteners to continue bonding for its potential Section 232 liability after exhaustion of the current bond.

Dated: September 19, 2022

/s/ Andrew Caridas
Michael P. House
Andrew Caridas
Shuaiqi Yuan
John B. Jacobs
Brenna D. Duncan
**PERKINS COIE LLP**
700 Thirteenth St., NW
Washington, D.C. 20005
202-654-6288
mhouse@perkinscoie.com