UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, M. MILLER BAKER, JUDGES; THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| OMAN FASTENERS, LLC, *ET AL.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, *ET AL.*, <br><br> Defendants. | Consol. No. 20-00037 <br><br> PUBLIC VERSION |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO COMPEL DEFENDANTS' COMPLIANCE WITH COURT ORDER**

On September 19, 2022, plaintiff Oman Fasteners, LLC (Oman Fasteners) filed a document entitled "Emergency Motion to Compel Defendants' Compliance With Court's April 15, 2022 Order." ECF No. 134 (hereafter, Mot.).[1] Defendants, the United States, *et al.*, respectfully provide this response.

---

[1] In that filing, Oman Fasteners requested a Court hearing as soon as Wednesday, September 28, 2022. Mot. at 2. We defer to the Court as to the timing (or necessity) of any hearing on Oman Fasteners' motion.

And although we would normally endeavor to file a public version of this filing along with this confidential version, we respectfully request permission to file a public version of this filing within two business days (before September 28, 2022) so we can confer with the other side to ensure this filing is properly treated.

The present dispute marks the latest chapter in a tense history between U.S. Customs & Border Protection (CBP) and Oman Fasteners as it relates to the issue of bonding, and Oman Fasteners' attempts to avoid paying estimated duty deposits on its entries under Section 232 of the Trade Expansion Act (Section 232) and 19 U.S.C. § 1505(a).  In its motion, Oman Fasteners makes a wide variety of allegations against CBP, suggesting that CBP is acting with intransigence, if not outright malfeasance.  It claims that CBP—for no good reason, and in defiance of this Court's order—is refusing to allow it to resume bonding in lieu of paying Section 232 deposits.  These claims are based upon an incomplete telling of the facts.

Before expounding on the events giving rise to the present dispute, we offer some necessary background.  Bonding (in lieu of paying estimated duty deposits as required under 19 U.S.C. § 1505(a)) is a unique privilege.  It is so unique, in fact, that almost no other entity has it.  For years, CBP conferred this privilege to Oman Fasteners, but it did so on the clear understanding that Oman Fasteners would properly secure its entries through enhanced bonding.  In fact, when there was doubt as to whether the arrangement was working, Oman Fasteners assured CBP (and this Court) in writing that it would track its entries and terminate and replenish its bonds to ensure proper protection of the public fisc.  The Court then effectuated that agreement in an order.

Today, we know that the arrangement has not worked.  Oman Fasteners has persistently under-bonded relative to its obligations.  It has engaged in a clear and consistent pattern of exceeding its bonding limits and failing to replenish its bonds as it assured the Government it would do.  The consequence of that neglect has been enormous.  Today, the vast weight ████████████ of Oman Fasteners' relevant entries is unsecured for Section 232 duties.[2]  And Oman Fasteners has refused to pay deposits (or put any security) on these unsecured amounts.

The focus of Oman Fasteners' motion (and this response) can be distilled down to two key issues.  The first issue is whether Oman Fasteners is entitled to the privilege of a bonding arrangement, in lieu of paying Section 232 estimated duty deposits, despite having persistently under-bonded relative to its obligations, and having failed to properly to track its entries and replenish bonds as it was required to do.  The second issue is whether Oman Fasteners can compel CBP to agree to honor the full amount of a present bond that it has put in place that Oman Fasteners unilaterally installed, despite its concession that it did not first obtain CBP's agreement on it.  Oman Fasteners insists that the answer to each of these questions is yes.  We disagree.

---

[2] This amount does not include the entries on which Oman Fasteners has paid Section 232 duties.  Oman Fasteners was not required to secure those entries through enhanced bonding, so they are not counted in these calculations.

## STATEMENT OF FACTS

**I.      Relevant Factual Background**

At the commencement of this case, and in lieu of briefing Oman Fasteners' motion for a preliminary injunction, the United States and Oman Fasteners negotiated an arrangement by which Oman Fasteners would secure its entries through enhanced continuous bonding, sufficient to secure the full amount of estimated Section 232 duties that Oman Fasteners would otherwise be required to deposit for its subject entries while this case was pending.  That arrangement was exceptional.  The law normally requires importers to pay estimated duties at the time of entry.  *See* 19 U.S.C. § 1505(a) ("… the importer of record shall deposit with the Customs Service at the time of entry … the amount of duties and fees estimated to be payable on such merchandise").  And in almost every similar case, importers bringing these lawsuits (challenging the legal validity of the Section 232 duties imposed by Presidential Proclamation 9980 of January 24, 2020, *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States*) have continued to pay estimated duty deposits on their entries in exchange for CBP's agreement to suspend liquidation of those entries while the litigation is pending.  Oman Fasteners, however, insisted upon different treatment.  It insisted that it should be able to secure its entries through increased bonding in lieu of paying estimated Section 232 duty deposits.  To obviate the need for

injunctive briefing, and based on the unique circumstances of this case, the United States ultimately agreed to that arrangement. And over the passage of time, when it began to appear to that Oman Fasteners was persistently under-bonding relative to its obligations, CBP stepped in and made Oman Fasteners affirmatively promise to "monitor its subject imports and foregone duty deposits" and to regularly "terminate" and "replace" these bonds once the amounts secured under these bonds were exhausted. Injunction Order, ECF No. 94 at 2. The Court then memorialized that agreement in an injunction order. *Id*.

That obligation to secure sufficient bonding and to continuously monitor its imports (and diligently replenish bonds) was a necessary facet of the arrangement. CBP is responsible for protecting the revenue of the United States by ensuring that estimated import duties are properly deposited and secured as required by law. Normally, that work would be done through CBP's Automated Commercial Environment (ACE) tracking system, which is a computer network specially designed for that purpose (among others). ACE automatically tracks when importers enter items into the country and when estimated and final duties owed on those entries are paid. But the bonding arrangement that Oman Fasteners had requested works outside this system. In fact, there is no system for it. Accordingly, CBP has no meaningful ability to track Oman Fasteners' shipments or its business activities in real-time. Nor does it have ready insight into how

quickly Oman Fasteners plans to exhaust its bonds. Given those limitations, CBP insisted that Oman Fasteners promise (both to it and this Court) that it would track its entries and take unilateral responsibility to fully ensure that its bonds offered sufficient coverage to protect the public fisc. Oman Fasteners agreed.

Today—two-and-a-half years later—the data establishes that the arrangement has not worked. Oman Fasteners has persistently under-bonded relative to its obligations, and it now presents a substantial risk to the public fisc. The following table spells out what the data shows.



See Attachment A, Lord Decl. (hereafter, Lord Decl.), ¶ 11.

As the numbers reveal, Oman Fasteners has [                                    
                                                                    ]. Throughout the

6

life of this case (and this is by our most conservative estimate), Oman Fasteners' collective bonds presently secure less than [▮▮▮▮▮▮▮] of the Section 232 duties that Oman Fasteners will owe for its subject entries to date if the Government prevails on appeal. Speaking monetarily, that is a collective overrun of about [▮▮▮▮▮▮▮▮]. These are the monetary figures that have recently come to light, and CBP's position cannot be accurately presented without them.

**II.     Specific Facts Giving Rise To Oman Fasteners' Motion**

Starting last year, and through early 2022, the parties had a prolonged bonding dispute related to the fact that Oman Fasteners no longer wished to bond or pay estimated Section 232 duty deposits on its entries. For months, the parties attempted to work through the issue but were unable to do so. They then approached the Court for resolution. Upon reviewing the matter, the Court ordered Oman Fasteners to pay estimated Section 232 duty deposits on its entries starting in April 2022 and moving forward. Order, ECF No. 133 at 9-10 (hereafter, Order). For the next four months, Oman Fasteners paid those deposits as required.

Then, on August 17, 2022, Oman Fasteners approached CBP to allow it to again resume bonding in lieu of paying Section 232 deposits. That request was premised on a subpart of the Court's April 2022 order, which contemplated that Oman Fasteners might be able to resume bonding again if "Oman Fasteners and defendants agree upon and implement bonding to secure potential government

7

revenue, during the remainder of the stay pending defendants' appeal of our prior judgment." Order at 9-10. Oman Fasteners proposed posting a bond worth $3.4 million and asked CBP to exclude it from paying Section 232 deposits. It further highlighted that it was "under extreme time pressure" and "urgent{ly}" asked CBP to let it know within two business days—by Friday, August 19, 2022— whether it could post that bond to forego paying those deposits. In the short time it had been afforded to respond, CBP agreed (at the deadline) to allow Oman Fasteners to post its ▬▬▬▬▬ bond and thereby resume being excluded from paying Section 232 duty deposits. Oman Fasteners then put in the paperwork to effectuate that bond.

    That agreement was a regrettable mistake. CBP had been unable to consult with important stakeholders, many of whom had better insight into the amount of money that Oman Fasteners presently owed (and failed to secure) and its longstanding treatment of CBP's bonding arrangement. *See* Lord Decl. ¶ 10. Many of these stakeholders were unavailable the week Oman Fasteners had submitted its request. *Id.* These individuals returned after the intervening weekend, returning to the office on Monday, August 22, 2022, and upon their return, CBP convened additional meetings on the matter. *Id.*

    Undersigned counsel learned of these continued deliberations later that evening, aware only generally that CBP was having some second thoughts as to its

agreement with Oman Fasteners but still uncertain of the particulars. Upon learning that CBP was having second thoughts, undersigned counsel wrote the following to Oman Fasteners' counsel.

> Hey Andrew, looks like CBP is not thrilled about the amount of the bonding OF is proposing given how quickly it may be exhausted based on running practice. I have a call w/ them tomorrow PM but I suspect they will insist that OF get a higher bond amount.
>
> ******
>
> I suspect we should chat about this soon. Let me know if/when you are free because I think we will need to nail this down. Thanks and hope you had a nice weekend.

Mot., Ex. A. at 1. Counsel for Oman Fasteners then wrote back:

> Given the tight timeline in CBP's deficiency notice, we already submitted the paperwork on Friday for the new bond, so I don't think we can change that now. We relied on CBP's representations below ….

*Id*.

The following day, on the evening of August 23, 2022, undersigned counsel and counsel for Oman Fasteners conferred via telephone. Undersigned counsel candidly explained that he had learned that CBP had offered its agreement to the bonding arrangement by mistake. CBP needed to know whether the bond was reversible, or whether it was true that Oman Fasteners had irreversibly acted in reliance upon CBP's statement. In response to that question, counsel for Oman Fasteners indicated that he would speak with Oman Fasteners' surety and try to

9

figure out whether it was too late to retract the bond. Oman Fasteners' counsel then mentioned possibly raising the bond amount to ▮▮▮▮▮▮▮▮ as a compromise, which undersigned counsel expressed might be more palatable. Undersigned counsel made clear, however, that he could not commit to anything without CBP's confirmation or agreement. The first step, all agreed, was to find out whether it was too late to retract the existing bond.[3]

Two days later, on Thursday, August 25, 2022, counsel for Oman Fasteners telephoned undersigned counsel to inform him of an unexpected development. He explained that there had been a misunderstanding on his end. Oman Fasteners' surety had unexpectedly gone ahead and unilaterally replaced the paperwork for a ▮▮▮▮▮▮▮▮ bond, with new paperwork for a ▮▮▮▮▮▮▮▮ bond. CBP had never agreed to that arrangement. Despite the mistake, Oman Fasteners' counsel communicated that his client had no choice but to "finalize the new bond

---

[3] The parties disagree as to some of the details of this call. *Compare supra with* Mot. at 8. While some details may be in dispute, the core facts are not. There is no dispute that the action of Oman Fasteners' surety to unilaterally apply for a higher bond was not authorized either by the Government or Oman Fasteners' counsel. *See* Mot. at 9 (conceding that surety unilaterally put in an application for a higher bond without being asked to do so). Nor is there any dispute that Oman Fasteners finalized that application without first asking undersigned counsel to obtain CBP's agreement on the matter. *Id.* (Oman Fasteners conceding that it finalized the application without first allowing undersigned counsel to confer with CBP because time was of the essence).

application and wire the remaining collateral to the surety" because time was of the essence.  Mot. at 9.  The situation was not reversible.

Undersigned counsel immediately conferred with CBP, informing them of this sudden (and unexpected) development.  During this time, undersigned counsel also learned that Oman Fasteners was separately telling the Department of Commerce (as part of a separate administrative review of an antidumping duty order) that its "continu{ed} operations" were not guaranteed, that its financial circumstances were dire, and that it might potentially stop importing items into the United States as early as the end of this year.  *See* Attachment B.  This news and Oman Fasteners' unexpected action compelled CBP to re-engage its stakeholders and participate in a broader discussion about how to treat the matter going forward.  The question was no longer limited to whether it would honor its first mistaken agreement, but also how it would treat this new development as to Oman Fasteners' larger bond and whether bonding was appropriate at all for Oman Fasteners.  The Government conferred internally the remainder of that day, throughout the following day, Friday, August 27, 2022, and into the morning of Monday, August 30, 2022.

On Monday, August 30, 2022, undersigned counsel called counsel for Oman Fasteners to inform him of CBP's decision.  Undersigned counsel explained that CBP would not renege on its first agreement to Oman Fasteners to respect bonding

11

in lieu of Section 232 duties up to the commensurate amount of the Oman Fasteners' first bond (minus the applicable bonding baseline).  While reiterating that the first agreement was a mistake, undersigned counsel explained that CBP would, in fairness, bear responsibility for that mistake.  However, Oman Fasteners' surety had unilaterally (and without confirmation) replaced that initial bond with an application for a ▮▮▮▮▮▮ bond, which was not an amount that CBP had ever agreed upon.  Undersigned counsel thus explained that although CBP intended to honor a bonding arrangement up to the amount of its first agreement, it would not allow the arrangement to continue up to the full amount of the second bond that Oman Fasteners had unilaterally installed.[4]  Moreover, undersigned counsel further explained that CBP could not agree to any further bonding in lieu of duty deposits going forward given Oman Fasteners' repeated failure to abide by its bonding obligations and the amount unsecured that remained outstanding.

After some additional discussion, Oman Fasteners' motion followed.

---

[4] Despite having no real-time insight as to Oman Fastener's importing activities, our best projections indicate that Oman Fasteners will exceed this bonding agreement (assuming a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at some point this week, *see* Lord Decl. ¶ 15, which is *substantially* sooner than Oman Fasteners has represented to this Court.  Oman Fasteners has vastly increased its import activities.  CBP thus intends to turn off the exclusion on September 29, 2022 (due to the exclusion programming cycle in ACE whereby exclusions are processed weekly on Thursday, *id.* ¶ 5).  From there, Oman Fasteners must pay estimated Section 232 duty deposits on its subject entries.

# ARGUMENT

**I.    CBP Is Under No Obligation To Allow Oman Fasteners' To Continue To Bond In Lieu Of Paying Section 232 Duties When Oman Fasteners Has A Longstanding History Of Failing To Honor A Condition For That Arrangement**

There is no dispute that Oman Fasteners has persistently under-bonded relative to its obligations and failed to track its entries and replenish its bonds as it was required to do.  Accordingly, perhaps the most important issue raised in these filings is whether Oman Fasteners is entitled to the privilege of bonding, in lieu of paying estimated Section 232 duty deposits under 19 U.S.C. § 1505(a), despite the massive risk to the potential revenue of the United States that Oman Fasteners has now created.  Respectfully, the answer is no.

Oman Fasteners bore an obligation to secure sufficient bonding coverage to protect the public fisc.  In fact, when it was discovered that Oman Fasteners was underestimating the amount of bonding necessary to secure its entries, CBP made Oman Fasteners promise that it would "monitor its subject imports and foregone duty deposits" and that it would regularly "terminate" and "replace" these bonds once the amounts secured under these bonds faced exhaustion.  Inj. Order at 2. The point of that provision—the sole reason for it, in fact—was that Oman Fasteners was the party best suited to carry it out, and Oman Fasteners agreed to do so.  Now, two-and-a-half years later, the data firmly establishes that the bonding arrangement as it relates to Oman Fasteners will not work.  Oman Fasteners has

consistently overrun its bonding limits, and it will not correct the shortfall.  To date, and in total, Oman Fasteners has secured less than ███████ of the duties it will owe under Section 232 if the Government prevails on appeal.

At minimum, these circumstances justify CBP's refusal to continue a bonding arrangement with Oman Fasteners that has failed.  That Oman Fasteners would bring a motion, accusing CBP of malfeasance given its present posture, is inexplicable.  The motion itself is meritless.  Oman Fasteners has no right to claim that it should be entitled to revive a bonding arrangement when it has persistently under-bonded relative to its obligation.  This is especially true where Oman Fasteners is refusing to correct the shortfall that it created in the first place.  Oman Fasteners attempts to parse the language of this Court's April 2022 order in various ways, insisting that the Court had conferred it such entitlement.  But it cannot trivialize the part of the order that states that Oman Fasteners may resume bonding "after reaching agreement with defendants on the resumption of bonding to secure the protection of the revenue for potential Section 232 duty liability…" Order at 9-10.  The Court's order, by its letter, indicates that the central point of bonding is to protect the public fisc.  Oman Fasteners has not done so, and it has no basis to argue otherwise.

## II. CBP Has Nonetheless Agreed To Partially Allow Limited Bonding Up To A Particular Amount Because Oman Fasteners Relied On CBP's Mistaken Representations, But It Should Not Be Obligated To Bear Responsibility For Oman Fasteners' Subsequent Mistake

There is an added issue in these filings. That issue is whether CBP (for purposes of the bonding arrangement) must honor the full amount of a bond that Oman Fasteners recently (and unilaterally) installed without first obtaining CBP's agreement as to the amount of that bond.

The details surrounding the events giving rise to the issue are somewhat contested, but the core facts are not. Those core facts are as follows. On Wednesday, August 17, 2022, Oman Fasteners asked whether it could post a ▮▮▮▮▮ bond to resume bonding in lieu of paying Section 232 deposits. On Friday, August 19, 2022, CBP mistakenly said yes. Oman Fasteners thereafter remitted the necessary paperwork for that bond. On the evening of Tuesday, August 23, 2022, CBP (through undersigned counsel) acknowledged its mistake and asked whether the bond was reversible. Counsel for Oman Fasteners indicated that he would check with Oman Fasteners' surety. On August 25, 2022, we learned that based upon a misunderstanding, Oman Fasteners' surety took the unilateral step of retracting the prior bond and then remitting new paperwork for a ▮▮▮▮▮ bond all without confirming that the arrangement was acceptable to CBP. Oman Fasteners then finalized the application without requesting or

receiving confirmation from CBP on the matter because it felt that time was of the essence.

These undisputed facts show that there were two mistakes in this sequence. The first belongs to CBP, when it mistakenly agreed in the first place to accept a ▓▓▓▓▓ bond so that Oman Fasteners could forego paying Section 232 deposits. CBP is willing to bear the responsibility for that mistake. It recognizes that it initially agreed that Oman Fasteners could post a ▓▓▓▓▓ bond in lieu of paying a certain amount of Section 232 duty deposits. It further recognizes that Oman Fasteners remitted money for that bond and acted in reliance upon CBP's assurance. Accordingly, CBP (in fairness) has agreed to stand by that agreement.

The second mistake, however, belongs to Oman Fasteners, when its surety unilaterally remitted new paperwork for a ▓▓▓▓▓ bond without first confirming the matter with CBP. Unlike CBP, Oman Fasteners will not bear responsibility for its mistake. It seeks to reassign fault, suggesting implausibly that it should not be viewed as the "cause{}" of its own bond. *See* Mot. at 15 (claiming "CBP" "caused Oman Fasteners" to apply for the ▓▓▓▓▓ bond). Oman Fasteners cannot have it both ways. It cannot acknowledge that its surety did something it should not have done, and then attempt to foist responsibility for that mistake elsewhere. Its surety mistakenly put in a request for a ▓▓▓▓▓ bond without first requesting or receiving confirmation from CBP. Oman Fasteners then

finalized that mistaken application without first checking to see whether CBP would be onboard with that arrangement. It does not matter that time was of the essence. *No one* asked Oman Fastener's surety to submit the application for the ▮▮▮▮▮▮ bond, nor did anyone ask Oman Fasteners to finalize that application prior to confirming CBP's agreement. These were Oman Fasteners' choices. CBP should not be forced to agree to a bond amount that it (indisputably) never agreed upon.

    The situation is unfortunate, but it is not complicated. Oman Fasteners has not honored its bonding arrangement with CBP, and it cannot demand a continuation of that arrangement in light of its past, and still uncorrected, conduct. Any relief that Oman Fasteners' requests should be denied.

                        Respectfully Submitted,

                        BRIAN M. BOYNTON
                        Principal Deputy Assistant Attorney General

                        PATRICIA M. McCARTHY
                        Director

                        <u>/s/ Tara K. Hogan</u>
                        TARA K. HOGAN
                        Assistant Director

                        <u>/s/ Meen Geu Oh</u>
                        MEEN GEU OH
                        Senior Trial Counsel
                        Department of Justice
                        Civil Division
                        Commercial Litigation Branch
                        P.O. Box 480, Ben Franklin Station
                        Washington, DC 20044
                        Tele: (202) 307-0184
                        Email: Meen-Geu.Oh@usdoj.gov

Dated: September 26, 2022          Attorney for Defendants